SOUTHWICK, P.J., for the Court:
¶ 1. Patrolman Ronald Wilburn was discharged from the Mississippi Highway Safety Patrol. On initial appeal, the Al-corn County Circuit Court affirmed. Having appealed to this Court, Wilburn argues that there was insubstantial evidence to support the discharge, and that the grounds alleged were a pretext for an improper motive. We find no support for these arguments factually or legally. Therefore we affirm.
STATEMENT OF FACTS
¶ 2. Wilburn was charged by the Mississippi Highway Safety Patrol (MHSP) with two separate disciplinary grounds arising from his issuance of traffic tickets. The first alleged that he falsified records. The second alleged that due to these actions, MHSP would be negligent in regards to its duties to the public to continue employing him.
¶ 3. The actions underlying these charges were Wilburn’s admitted practice of stopping vehicles and issuing more citations to drivers than he would present to them. After giving copies of some of the citations and after the vehicles departed, Wilburn would write additional citations. He has alleged throughout these proceedings that this a common practice by patrolmen to respond to a perceived but unstated quota requirement at MHSP. Wilburn would report the issuance of all these tick *577 ets but would seek to have a justice court dismiss the secret ones. That did not always occur, causing drivers later to learn that they had unpaid fines.
¶ 4. Following a performance review board hearing, Wilburn was discharged on August 14, 1996. An administrative hearing was held in January 1997, and an order with detailed findings of fact issued upholding the discharge. On July 3, 1997, the Employees Appeals Board (EAB) upheld the administrative hearing order. On January 18, 2000, the circuit court affirmed.
DISCUSSION
¶ 5. An employee dissatisfied with “action adversely affecting his employment status” may appeal to the Employee Appeals Board. Miss.Code Ann. § 25-9-131 (Rev.1999). The proceedings are to be “de novo,” yet the Supreme Court has upheld the Board’s interpretation that its role is statutorily restrained in this manner:
[State Personnel Board] Rule 20(b) mandates that the EAB shall not alter the action taken by the agency, if the agency has acted in accordance with the published rule and if the personnel action taken by the agency is allowed under the guidelines.
Johnson v. Mississippi Dep’t of Corrections, 682 So.2d 367, 370-71 (Miss.1996). The employee has the burden of proof to show that the employing agency acted improperly. Id.
¶ 6. In turn, our review of a decision by the EAB employs this normal deferential standard:
In reviewing the decisions of administrative agencies, this Court will entertain the appeal only to determine: whether or not the order of the administrative agency (1) was unsupported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party.
Shird v. Mississippi State Dept. of Mental Health, 785 So.2d 275, 278 (Miss.2001).
¶ 7. This combination of EAB and judicial review standards results in a court’s need to determine whether the EAB within its range of discretion properly determined that the employing agency did or did not act within published rules and if the discipline imposed was allowed by the guidelines.
¶ 8. The administrative hearing order, which the EAB upheld, concluded that Wilburn had falsified citations. This conclusion is supported upon two factual grounds. First, Wilburn admitted that he purposefully did not give drivers copies of all the citations he issued and which he submitted to justice court for action. Copies of these citations were introduced into evidence at the administrative hearing. These citations reveal that Wilburn filled in a time and date that the person to whom the citation was issued was “notified to appear or contact the justice court clerk of Alcorn County.” Wilburn’s own testimony indicated that he did not notify many of the drivers named on citations of their need to appear. These certifications that drivers were notified of their obligations were false. The citations were then presented by Wilburn for processing.
¶ 9. The second factual basis for concluding that Wilburn falsified records went to the issue of whether he wrote citations for offenses that did not occur at all. The copies of the citations introduced into evidence all included a sworn statement by Wilburn attesting to the fact that he had probable cause to believe the driver cited had in fact committed the offense for which the citation was issued. There was testimony from some of the drivers that he *578 issued citations for offenses that never occurred. For example, two drivers, who had citations written but not presented to them for failure to wear seatbelts, testified that they had been wearing seatbelts at the time they were stopped. Wilburn denied writing citations for infractions that did not occur, but he also refused to contradict these two witnesses. The hearing officer’s decision stated that “[t]here was uncontradicted testimony from at least two of the witnesses that at the time they were stopped they were wearing their seat belts[;] they found out later that there were citations charging them with a seat belt violation, signed by [Wilburn].”
¶ 10. Regardless of whether it was quite correct to state that the matter was “uncontradicted,” we find controlling that witness credibility is largely a matter for the hearing officer. See, e.g. Oswalt v. Abernathy & Clark, 625 So.2d 770, 772 (Miss.1993).
¶ 11. Substantial evidence supported the conclusion that Wilburn falsified records both by swearing on the citations themselves that he notified drivers of each citation and by issuing tickets for offenses that he in fact had not witnessed.
¶ 12. In addition to the charge that Wilburn falsified records, there was a second disciplinary charge that due to his actions in performing his official duties, MHSP would be negligent in its duties to the public to continue employing him. Due process requires that an individual who is to be punished for a crime be fully advised of what the State alleges to have occurred. See, e.g., Evans v. State, 725 So.2d 613, 660 (Miss.1998). In this case, MHSP knew Wilburn’s actions were arguably denials of due process rights. In fact, the hearing officer concluded that Wilburn violated the due process rights of the individuals who were not given copies of the citations. Therefore, substantial evidence supported a finding that this disciplinary ground justified Wilburn’s discharge.
¶ 13. Wilburn attempted to convince the hearing officer that his termination was actually in response to his efforts to get MHSP to stop withholding federal income and Social Security taxes from his pay. The hearing officer considered that evidence, rejected it, and found no pretext for Wilburn’s discharge. That finding is supported by the evidence.
¶ 14. Finally, we note Wilburn’s argument that he was responding to the perceived quota system at MHSP. There was testimony from some other patrolmen that they also believed that unless they issued a certain number of citations, that they would be transferred to less desirable duties. There were also denials by other witnesses of any such system. There was no testimony of a policy that patrolmen should issue citations for offenses they did not witness, nor that patrolmen should only give some of the citations for actual offenses to the drivers. At most there was some disputed evidence that patrolmen would be evaluated in part by the number of citations that they wrote.
¶ 15. How patrolmen responded to the perception of a quota was a matter of individual choice. Wilburn chose poorly. That others may also have chosen poorly did not exonerate Wilburn. There was also some evidence of efforts by top officials at MHSP to dispel the perception of any secret quota system. These are not matters relevant to our decision.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF ALCORN COUNTY AFFIRMING THE ORDER OF THE EMPLOYEES APPEAL BOARD IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*579 McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, AND CHANDLER, JJ., CONCUR.
BRANTLEY, J., Not Participating.