856 So.2d 485 (2003)
Daniel L. DAVIS, Appellant,
v.
MISSISSIPPI STATE DEPARTMENT OF HEALTH, Appellee.
No. 2001-SA-01914-COA.
Court of Appeals of Mississippi.
April 8, 2003.
Rehearing Denied July 15, 2003.
*486 Darold L. Rutland, attorney for appellant.
Romaine Levean Richards, Jackson, attorney for appellee.
Before McMILLIN, C.J., THOMAS and CHANDLER, JJ.
CHANDLER, J., for the court.
¶ 1. Daniel Davis was terminated by the Mississippi State Department of Health (MSDH). The Employee Appeals Board (EAB) reversed and reinstated Davis. The Circuit Court of the First Judicial District of Hinds County reversed the decision of the EAB and reinstated Davis' termination. Davis appeals, arguing that the decision of the circuit court was not supported by substantial evidence, that he was denied due process by MSDH, and that he is entitled to attorney's fees and costs under 42 U.S.C.A. § 1988.
¶ 2. Finding error, we reverse and render judgment reinstating the judgment of the EAB.

FACTS
¶ 3. Davis was hired by MSDH in 1992. He worked for MSDH as a disease intervention specialist at the Five Points Clinic in the Jackson Medical Mall. The Five Points Clinic diagnosed and treated patients with sexually transmitted diseases. Davis' duties included informing patients of their test results, counseling patients in order to prevent disease recurrence, and going into the field to locate and counsel *487 patients' sexual partners. Davis' duties did not include physical examination of female patients.
¶ 4. On July 21, 1999, a sixteen-year-old female patient, K.J., called the clinic to report that she had been treated inappropriately by a staff member. K.J. came to the clinic and dictated a statement to Mary Jane Coleman, the division supervisor, and Grant Loftin, the clinic director. K.J. did not know the staff member's name, but provided a physical description that indicated Davis.
¶ 5. The statement alleged the following. K.J. came to the clinic to receive the results of STD tests conducted the previous week. K.J. was referred to Davis, who escorted her into a small interview room. After informing K.J. she had tested positive for gonorrhea and chlamydia, Davis told K.J. to take off her shorts and panties so he could check her lymph glands for infection. She did so, and he felt along her bikini line. Then, he told her he needed to check for discharge, and he inserted his hand into her vagina, said everything was "O.K.," and removed his hand. He said he needed to check for lumps and reinserted his hand. At this point, K.J. asked Davis why he was not wearing gloves. Davis told her that nothing was wrong with her, and she began dressing. Then, Davis grabbed K.J., hugged her tightly, and told her that she needed a man to take care of her instead of little boys. K.J. pushed Davis away, and he grabbed her breasts and told her that she must "know some stuff" because of the size of her breasts. K.J. squeezed past Davis and out the door. As K.J. was walking home from the clinic, Davis drove up to her twice and made harassing comments. When K.J. arrived home, Davis stopped outside and began blowing his car horn.
¶ 6. On July 23, 1999, Davis received written notice that he had been placed on administrative leave with pay, pending an investigation of a charge of malfeasance. On September 7, 1999, he received a pre-termination notice stating that his termination was being considered based on K.J.'s statement.[1] The notice also stated that investigation of the charge had revealed that, in 1992, a minor female patient had filed a criminal charge against Davis for simple assault, but that the charge had been dropped when Davis reimbursed the girl's mother for the filing fee.
¶ 7. Davis provided his version of the events at a pre-termination hearing on September 23, 1999. Davis' testimony alleged the following. Davis escorted K.J. to the interview room. K.J. was wearing an extremely short dress that revealed the "top of her panties" when she was sitting down. Davis recited the test results. K.J. stated that she had two sexual partners, a thirty-year-old and a nineteen-year-old. Davis told K.J. that she should refrain from sex or get a more mature man that would not give her any diseases. Then, Davis verbally admonished K.J., telling her that if he was her father, he would "whoop her butt" for dressing inappropriately. K.J. responded that Davis was not her father and could not tell her how to dress, and Davis repeated that if he was her father he would "whoop her butt." K.J. left the room. Davis left the clinic to *488 perform field work, and spotted K.J. walking down the street.
¶ 8. After the hearing, Davis received notice that he was terminated as of October 15, 1999. Davis appealed to the EAB and a bifurcated hearing was held before Hearing Officer William H. Smith, III. Davis presented character witnesses who opined that Davis would never do such a thing. Several coworkers testified that disease intervention specialists routinely tailored counseling techniques to the individual patient to discourage participation in at-risk behavior. Davis testified as to his version of the events, and stated that he admonished K.J. about her clothing and the maturity of her sexual partners in an effort to counsel K.J. K.J. testified, and adopted her statement as her version of events. Dr. Ginger Smith, K.J.'s personal friend and Youth Court counselor, testified that, in her opinion, K.J. was a habitual liar who could not be believed without corroborating evidence.
¶ 9. On September 11, 2000, the hearing officer entered an order reversing the termination. The order was affirmed by the EAB en banc. The MSDH applied for certiorari to the circuit court. The circuit court granted certiorari, reversed the decision of the EAB and reinstated the termination.
¶ 10. On appeal, Davis raises four assignments of error:
I. WHETHER THE EMPLOYEE APPEALS BOARD'S HEARING OFFICER'S DECISION AND THE BOARD'S EN BANC DECISION ARE SUPPORTED BY SUBSTANTIAL EVIDENCE.
II. WHETHER THE APPELLANT WAS DENIED DUE PROCESS PRIOR TO HIS TERMINATION WHEN A PRE-TERMINATION CONFERENCE WAS NOT TIMELY CONDUCTED AND THUS VIOLATED THE MISSISSIPPI STATE PERSONNEL BOARD POLICY MANUAL, RULES AND REGULATIONS.
III. WHETHER APPELLANT IS ENTITLED TO ATTORNEY'S FEES AND COSTS PURSUANT TO 42 U.S.C.A. §§ 1983 AND 1988.
IV. WHETHER THE HINDS COUNTY CIRCUIT COURT'S DECISION BELOW IS ARBITRARY AND CAPRICIOUS, NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
LAW AND ANALYSIS
I. WHETHER THE EMPLOYEE APPEALS BOARD'S HEARING OFFICER'S DECISION AND THE BOARD'S EN BANC DECISION ARE SUPPORTED BY SUBSTANTIAL EVIDENCE.
II. WHETHER THE HINDS COUNTY CIRCUIT COURT'S DECISION BELOW IS ARBITRARY AND CAPRICIOUS, NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 11. These issues require our review of Davis' termination and will be determined together. An employee governed by the Statewide Personnel System may not be dismissed except for inefficiency or other good cause shown. Miss.Code Ann. § 25-9-127(1) (Rev.1999). On hearing or appeal of a dismissal, an employee is required to furnish evidence that the reasons stated in the notice of dismissal are not true or are not sufficient grounds for the action taken. Id. An employee may appeal dismissal to the EAB. Miss Code Ann. § 25-9-131(1) (Rev.1999).
¶ 12. Though under Mississippi Code Annotated § 25-9-131(1), the EAB conducts *489 hearings de novo, our supreme court has found that language from the State Personnel Board Rules limits the EAB's de novo review. "Rule 20(b) mandates that the EAB shall not alter the action taken by the agency, if the agency has acted in accordance with the published rule and if the personnel action taken by the agency is allowed under the guidelines." Johnson v. MDOC, 682 So.2d 367, 370 (Miss.1996). The EAB does not take it upon itself to make the employment decision, but must affirm the agency unless the employee meets the burden of proof to show that the agency's action was "arbitrary, capricious, against the overwhelming weight of the evidence and merits the relief requested." S.P.B. Rule 10.40.19 (B) (Rev.1999).
¶ 13. On review, the circuit court must affirm unless the EAB's decision was:
(a) Not supported by any substantial evidence;
(b) Arbitrary and capricious; or
(c) In violation of some statutory or constitutional right of the employee.
Miss.Code Ann. § 25-9-132(2) (Rev.1999). This Court applies the same standard of review as the circuit court. State Tax Comm'n v. Vicksburg Terminal, Inc., 592 So.2d 959, 961 (Miss.1991).
¶ 14. We will reverse the circuit court if the EAB's reversal of the termination was supported by substantial evidence and was not arbitrary and capricious. "Substantial evidence means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred." Delta CMI v. Speck, 586 So.2d 768, 773 (Miss.1991) (quoting State Oil & Gas Bd. v. Mississippi Min. & Roy. Own. Ass'n, 258 So.2d 767, 779 (Miss.1971)). "An administrative agency's decision is arbitrary when it is not done according to reason and judgment, but depending on the will alone. An action is capricious if done without reason, in a whimsical manner, implying either a lack of understanding of or disregard for the surrounding facts and settled controlling principles." Mississippi State Dept. of Health v. Natchez, 743 So.2d 973, 977 (¶ 13) (Miss.1999).
¶ 15. We review the decision of the hearing officer that was affirmed by the EAB. After four days of testimony, the hearing officer found that MSDH had acted arbitrarily and capriciously when it terminated Davis. The hearing officer found that the testimony of K.J. was "evasive and unconvincing," and that K.J. was not a credible witness. Based on this conclusion, the hearing officer did not accept the facts alleged in K.J.'s statement. The hearing officer further found that MSDH insufficiently investigated the charge prior to its termination of Davis. At the hearing, the compliance officer in charge of the MSDH investigation testified that he never interviewed K.J. prior to the termination because he was unable to locate K.J. The hearing officer concluded that MSDH acted too hastily in terminating Davis, and that had MSDH reinterviewed K.J. prior to the termination decision, "a different result would have occurred."
¶ 16. We find that the hearing officer's conclusion was supported by substantial evidence. The hearing officer was confronted with two diametrically opposed versions of the incident, one presented by Davis and one presented by K.J., and there were no eyewitnesses to confirm either story. It was within the discretion of the hearing officer to evaluate the demeanor of the witnesses and to make a credibility determination. "[W]itness credibility is largely a matter for the hearing officer." Wilburn v. Mississippi Highway Safety *490 Patrol, 795 So.2d 575, 578 (¶ 10) (Miss.Ct. App.2001). K.J.'s statement was the basis for Davis' termination. Once the hearing officer rejected K.J.'s statement, it was reasonable for him to infer that the reasons given for Davis' termination were not true. The hearing officer's conclusion was supported by his finding that MSDH's failure to reinterview K.J. constituted insufficient agency fact-finding prior to the termination decision.
¶ 17. The hearing officer further found the 1992 charge insufficient to warrant termination because it was dismissed without a finding against Davis. As evidence of the charge, MSDH relied on a memorandum written by one of Davis' coworkers. The coworker wrote that Davis' then supervisor personally investigated the 1992 charge and arranged to have the charge dismissed. At the hearing, MSDH stated that Davis' termination was not due to the 1992 charge, rather, the charge was included in the pre-termination and termination notices to indicate the 1999 charge had been thoroughly investigated. The hearing officer's decision that the evidence regarding the 1992 charge was insufficient to support dismissal was not arbitrary and capricious.
¶ 18. MSDH also argues that, even without K.J.'s statement, the EAB should have affirmed Davis' dismissal based on his admitted statements to K.J., that she should "get a more mature man" and that if he was her father he would "whoop her butt" for dressing inappropriately. We are unable to consider this argument. State Personnel Board Rule 9.20.6(B) (Rev.1999) prescribes the process an agency must afford an employee regarding an adverse employment action:
The written notice presented to an employee prior to a conference shall list all of the reason(s) for the appointing authority's consideration of the adverse action, and the written notice of the appointing authority's final decision to take adverse action shall restate all of the reason(s) for the action. The reason(s) listed in these notices shall be specific by setting forth the particular group offense(s) violated and the charge(s) or ground(s) upon which the disciplinary action is predicated. The reason(s) listed in these notices shall be the only reason(s) to be addressed throughout the appeals process.

Id. (emphasis added).
¶ 19. Davis' pre-termination notice and termination notice stated that the termination decision was based on K.J.'s statement and on the1992 charge. According to its published rules, MSDH must state all reasons for an adverse action in the pre-termination notice and the termination notice. Id. MSDH may not raise alternate theories supporting a termination decision during the appellate process. Id. We reverse the decision of the circuit court because the EAB's reversal of Davis' termination was supported by substantial evidence and was not arbitrary and capricious.

II. WHETHER THE APPELLANT WAS DENIED DUE PROCESS PRIOR TO HIS TERMINATION WHEN A PRE-TERMINATION CONFERENCE WAS NOT TIMELY CONDUCTED AND THUS VIOLATED THE MISSISSIPPI STATE PERSONNEL BOARD POLICY MANUAL, RULES AND REGULATIONS.
¶ 20. Davis argues he was denied due process regarding the conduct and timing of the pre-termination hearing. Davis argues he was denied due process at the pre-termination hearing because he was unable to defend himself within the meaning of Cleveland Bd. of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Davis contends the hearing *491 did not comport with the Loudermill requirements because he was not allowed to call witnesses and his attorney was not allowed to speak.
¶ 21. Loudermill requires that, prior to termination, a public employee must have an opportunity to present his side of the story. Id. at 546, 105 S.Ct. 1487. Davis had the opportunity to present his side of the story at the hearing, and he did so. This Court has found that due process does not require that a pre-termination hearing be "a full-blown formal adversarial proceeding." MSDH v. Hogue, 801 So.2d 794, 797 (¶ 11) (Miss. 2001). There is no authority to compel the presence of witnesses at a pre-termination hearing. This is because the employee has the right to a full adversarial proceeding before the EAB. Id. at (¶ 12). Further, the Mississippi Supreme Court recently stated that a de novo hearing before the EAB cures "any deficiencies that may have occurred in the lower levels of the grievance review process." Harris v. Mississippi Department of Corrections, 831 So.2d 1105, 1108 (¶ 11) (Miss.2002). Davis had the opportunity to make arguments, put on witnesses, and cross-examine witnesses at the EAB hearing. This issue is without merit.
¶ 22. Davis also argues he was denied due process because the pre-termination hearing was untimely. Davis contends that the written notice of July 23, 1999, resulted in his suspension with pay. Personnel Board Rule 9.20.6 states that "in extraordinary circumstances an employee may be suspended immediately with pay. Such employee must be given an opportunity for a hearing within twenty working days of the suspension...." Davis argues that he was denied due process because he was not afforded an opportunity for a hearing until September 23, 1999, over twenty days from the suspension.
¶ 23. MSDH contends that Davis was not suspended with pay and, therefore, there was no twenty day requirement. The MSDH argues that, in actuality, Davis was placed on administrative leave pursuant to Rule 7.22. 4(B). That rule adopts the language of Miss.Code Ann. § 25-3-92(2), which states, "`administrative leave' means discretionary leave with pay, other than personal leave or major medical leave." Id.
¶ 24. The written notice of July 23, 1999, stated,
[y]ou are hereby notified that effective immediately, you are placed on Administrative Leave with pay, pending further notice. Your employment, including your salary, and all rights as an employee of this agency will remain in effect during this period. The above action is needed pending the completion of a review by the agency into a charge of malfeasance....
¶ 25. According to the written notice, MSDH placed Davis on administrative leave. The Personnel Board Rules define administrative leave as discretionary leave, in other words, leave that the agency may grant at its discretion. S.P.B. Rule 7.22.4(B). Pursuant to Rule 9.20.6, MSDH could have chosen to suspend Davis with pay. However, MSDH acted within the scope of its rules by placing Davis on administrative leave pending investigation of the charge. Davis continued to receive full pay and benefits for the duration of the leave. MSDH was not required to afford Davis the opportunity for a hearing within twenty days. Davis was not denied due process.

III. WHETHER APPELLANT IS ENTITLED TO ATTORNEY'S FEES AND COSTS PURSUANT TO 42 U.S.C.A. §§ 1983 AND 1988.
*492 ¶ 26. Davis premises this argument on the conclusion that he was denied due process. We have found that Davis was not denied due process; therefore, we will not address the merits of this argument.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY IS REVERSED AND RENDERED AND APPELLANT IS REINSTATED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, MYERS AND GRIFFIS, JJ., CONCUR. KING, P.J., CONCURS IN RESULT ONLY. IRVING, J., NOT PARTICIPATING.
NOTES
[1] The notice charged Davis under Mississippi State Personnel Board Policy Manual Rule 9.10(C)(11) (Rev.1999), under which the State may dismiss employees for "acts or conduct occurring on or off the job which are plainly related to job performance and are of such nature that to continue the employee in the assigned position could constitute negligence in regard to the agency's duties to the public or to other state employees." The charge is a Group III offense, the most serious level of offense provided by the Personnel Board Rules.