# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CT-00972-SCT

*SAMMY WILLIAM RAY*

*v.*

*MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 05/23/2013 |
| TRIAL JUDGE: | HON. JEFF WEILL, SR. |
| TRIAL COURT ATTORNEYS: | JEFFERY P. REYNOLDS |
| | TIMOTHY DAVIS SMITH |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JEFFERY P. REYNOLDS |
| ATTORNEY FOR APPELLEE: | TIMOTHY D. SMITH |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED - 08/13/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1. The Mississippi Highway Safety Patrol (MHP) discharged Officer Sammy Ray for falsification of official state documents. Upon receiving notice of his termination, Ray appealed to the Employee Appeals Board (EAB). The EAB conducted a hearing and upheld Ray's termination. On appeal, the Hinds County Circuit Court affirmed. But the Court of

Appeals reversed the circuit court judgment, concluding that Ray's due process rights were violated because the EAB's decision was based on conduct other than that for which he officially was charged. The Court of Appeals awarded Ray reinstatement and back pay. The Department of Public Safety ("Department") appeals to this Court, asserting that the Court of Appeals improperly reweighed the evidence and failed to give sufficient deference to the EAB's findings. We agree and now reverse the judgment of the Court of Appeals and reinstate and affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

¶2.     Ray joined the MHP in 2003. In 2007, he was promoted to Trooper First Class, the position he held until his termination in 2010.

¶3.     On October 2, 2009, the Department began an investigation of Ray after an audit of ticket control sheets showed multiple voided tickets. Through the investigation, the Department determined that Ray had written false tickets on four separate occasions[1] and had made a DUI arrest without wearing his Class A uniform.[2] As a result, Ray's troop captain brought charges against Ray, alleging four counts of record falsification and one count of insubordination. Specifically concerning the record-falsification charges, the narrative statement of charges provided:

---

[1] Falsification of Records is a Group Three Offense under MHP policy. According to the policy, *one* Group Three Offense is a sufficient basis for termination.

[2] By engaging in this activity without wearing his Class A uniform, Ray directly violated General Order 05/02. Violation of this order is a form of insubordination, a Group Two Offense. A Group Two Offense is punishable by suspension without pay, not to exceed five days.

2

Through investigation into the allegations against Ray it was discovered that on four (4) separate occasions he had written false tickets, otherwise known as "ghost tickets" on people that he had encountered on the road. Ray would issue a citation to an individual and obtain their personal information. He may issue a lone citation and then with the individual's personnel [sic] information write an additional charge that would be entered on his ticket control sheet to make it appear as though he was writing more tickets than he actually was at the time. In doing so, Ray was falsifying official state documents, which is a Group Three Offense. He did this on four (4) occasions resulting in four (4) separate Group Three charges for falsification of records.

¶4. Ray exercised his right to a pretermination hearing before the Performance Review Board. At the hearing, Ray admitted to the insubordination count but denied the record falsification counts. But the Board unanimously determined that the record falsification charges were well-founded. As a result of the Board's findings, Ray received a letter of termination from the Chief of the Mississippi Highway Patrol.

¶5. Ray appealed his termination to the EAB, which held a hearing on January 25 and 26, 2011. The hearing officer heard extensive testimony from both sides concerning the record falsification charges against Ray.[3] The Department presented evidence from its internal investigation, including statements made by four motorists (Sandra Carpenter, Joshua Ulmer, William Thomas, and Kaci Patterson) who were issued tickets by Ray.

¶6. Carpenter stated that Ray had given her a ticket for an expired inspection sticker only, but that the Department later contacted her during its investigation and informed her that Ray also had recorded a ticket for a seatbelt violation. Ulmer stated that Ray had given him a ticket for a seatbelt violation only, but he was later informed that Ray also had recorded a

_____

[3] Because Ray admitted to the insubordination charge, no evidence of that charge was presented at the hearing. The hearing officer considered only evidence concerning the four counts of record falsification.

3

ticket for speeding. Thomas stated that he did not remember Ray giving him a ticket for speeding or for an inspection-sticker violation, and that he knew he had never received a ticket for a seatbelt violation. But he later found out that Ray had recorded tickets for all three of those violations. And Patterson stated that Ray had given her no ticket, but she later found out that Ray had recorded a ticket for a seatbelt violation and for speeding.

¶7.     Investigator Creede Mansell testified that Ray had an "exceptional number" of voided tickets on his control sheets:

> Q.  And you mentioned so many voided tickets. Is your – is your opinion as a Highway Patrolman and investigator, Internal Affairs investigator, are there an exceptional amount of voided tickets on here, on [Ray's] control sheets?
> A.  I would say so. I've never seen citations – I mean two control sheets that had this many voids. I mean, there's some that have you know, up to 15.

Mansell also testified about an interview that he had conducted with Ray during the investigation:

> Q.  During that interview, did Sammy Ray say anything verbally to you during your questioning of him as to these tickets?
> A.  Nothing more than just, you know, that he would stop individuals and – for a valid charge, and then that he would actually write the individual another citation which was – which the actual violation did not occur. The majority of those were seatbelt violations. In the interview, he did say that – that he did this to pad his weekly reports as well as his –
> Q.  He did it to pad his weekly reports?
> A.  Yes. As well as his monthly statistics.
> Q.  You're saying that – you understand that you're a sworn witness, and you're saying he did this to pad his weekly reports.
> . . .
> A.  Yes.

¶8.     The Department also entered into evidence audio recordings of the two interviews conducted by Mansell. In the first interview, Ray stated as follows:

4

Mansell: Okay, and then on some of the – some of the particular stops there may have been instances where there was a good violation, such as speeding or careless driving, something to that nature, and – and then a seatbelt violation would follow. In some of those situations, were the actual seatbelt violations good violations or were they just tickets that were – that you marked seatbelt violations on there just – just to – just to mark it, is that kind of what you told me earlier?

Ray: Yes.

. . .

Mansell: Out of those 30 stops in a month how many times would you say that occurs?

Ray: I don't know. Maybe three or four, I guess. I don't know.

Mansell: So, three or four – three or four times a month, so that would be – would that be like every month?

Ray: I guess 20 or 25 times a month, to put a number on it, I don't know.

Mansell: Okay. So, and just – just to make sure that what we are talking about – you make a – you make a good actual stop for say speeding and the individual has their seatbelt on and you just write a no seatbelt violation and void it?

Ray: Yeah.

And in the second interview, Ray stated as follows:

Mansell: And what – what brought that on. I mean what – what transpired [sic] you to just add extra tickets?

Ray: I was just trying to get my numbers up.

Mansell: Were your numbers down?

Ray: No – not really, but I was just trying to play a numbers game. You know, just trying to stay out of hot water.

. . .

Mansell: Well, then why would you need to stay out of trouble if you'd never been counseled or anything like that before?

Ray: Poor judgment.

¶9. The Department also introduced two written statements made by Ray during the course of the investigation. The first statement provided:

During this interview I have admitted to the writing of 20-25 tickets that were seatbelt tickets and some of the tickets that I issued were not valid tickets (seat belt tickets). These tickets were turned into Justice Court and turned in along

5

> with my weekly reports. All seat belt tickets that were not valid tickets were voided when they were turned into Justice Court.

The second statement provided:

> During the time I have been employed with the MDPS, I have written 20-25 tickets that may or may not be factual tickets. These tickets were seatbelt violations. This was done to increase my ticket activity.

¶10. Ray's counsel argued that the Department had no evidence that the four specific motorists were included within the twenty-to-twney-five invalid tickets. Additionally, Ray introduced affidavits from Carpenter, Thomas, and Ulmer. Carpenter stated that Ray had given her a ticket for an expired inspection sticker, and that she was not handed any other paper tickets. She also stated that she wears her seatbelt while driving, but that she might have removed it after she was stopped in order to retrieve her purse. Thomas stated that Ray may have given him a verbal warning during the stop, but that he was not handed any paper tickets. And Ulmer stated that Ray had issued him a ticket for a seatbelt violation, but that he did not recall recieving any other paper tickets. He also stated that it was possible that he was speeding, and that it was also possible that he had received a verbal warning for that. The three drivers signed the affidavits on December 30, 2010, more than fourteen months after their initial statements to the Department.

¶11. On June 30, 2011, the hearing officer issued an order affirming Ray's termination. In pertinent part, the order provided:

> With regard to the allegation of falsification of records the evidence supports a finding that the reasons for the Agency's decision were in fact true. There is ample evidence that Ray wrote tickets that were not for actual violations and that were not intended to be prosecuted, but were used only to increase the number of tickets he was credited with writing . . . . Ray clearly had intent to

6

conceal his actions as evidenced by his failure to void the tickets turned into the Master Sargent [sic] and his shredding of the fourth copy of the tickets.

¶12. Ray then filed a request for review by the full EAB. The full EAB granted Ray's request but ultimately upheld the hearing officer's decision. Ray then appealed to the Hinds County Circuit Court, which affirmed the EAB's findings and upheld Ray's termination. Ray appealed to this Court, and we assigned the case to the Court of Appeals. There, Ray argued that the EAB abused its discretion by considering evidence outside the charges brought against him when making its decision to uphold his termination. Ray contended that he was charged only with writing fraudulent tickets to Carpenter, Ulmer, Thomas, and Patterson, and that the EAB's consideration of any evidence not concerning these four individuals violated EAB Administrative Rule XIX(d)[4] and his due process rights.

¶13. The Court of Appeals agreed with Ray, finding that he was charged only with writing tickets to the four aforementioned individuals. *Ray v. Miss. Dep't of Pub. Safety*, 2014 WL 5334783, at *1 (Miss. Ct. App. Oct. 21, 2014). Because of that, the Court of Appeals determined that Ray's written statements concerning the twenty-to-twenty-five invalid tickets were irrelevant and should not have been considered by the EAB. *Id.* at *1. As such, the court found that Ray's due process rights were violated when the EAB considered evidence concerning charges that were not brought against him. *Id.* at *9. It reversed the judgments

---

[4] EAB Administrative Rule XIX (d) provides: "The presiding Hearing Officer shall hear or receive evidence on only those reasons and allegations contained in the responding agency's final disciplinary notice to the employee of such action."

of the EAB and the Hinds County Circuit Court and found that Ray was entitled to reinstatement, with full back pay and benefits. *Id.*

¶14. We granted the Department's writ of certiorari. The Department argues that the Court of Appeals erred by reweighing the evidence and by failing to give sufficient deference to the EAB's findings. We agree, and we therefore reverse the judgment of the Court of Appeals and reinstate and affirm the judgment of the Hinds County Circuit Court affirming the EAB decision.

## STANDARD OF REVIEW

¶15. The scope of judicial review of the findings and actions of an administrative agency is well-settled. *Miss. Comm'n of Envtl. Quality v. Chickasaw Cnty. Bd. of Supervisors*, 621 So. 2d 1211, 15 (Miss. 1993). The reviewing court must affirm the agency decision if the decision was (1) supported by substantial evidence; (2) not arbitrary or capricious; (3) within the scope or power of the agency; and (4) not a violation of the aggrieved party's constitutional or statutory rights. *Bd. of Law Enforcement Officers Standards and Training v. Butler*, 672 So. 2d 1196, 99 (Miss. 1996); *Sprouse v. Miss. Employment Sec. Comm'n*, 639 So. 2d 901, 902 (Miss. 1994).

¶16. This Court has held that "[s]ubstantial evidence means evidence which . . . afford[s] a substantial basis of fact from which the fact in issue can be reasonably inferred." *State Oil and Gas Bd. v. Miss. Mineral & Royalty Owners Ass'n*, 258 So. 2d 767, 79 (Miss. 1971). Substantial evidence exists so long as there is evidence that a reasonable mind might accept as sufficient to support a conclusion. *Id*. "[T]he [reviewing] court is not authorized to

substitute its judgment for that of the [agency] where there is substantial (that is, more than a scintilla of) evidence to support the finding." *Miss. Pub. Serv. Comm'n v. Merchants Truck Line, Inc.*, 598 So. 2d 778, 782 (Miss. 1992). Moreover, "[t]here is a rebuttable presumption in favor of the agency decision and the burden of proof is on the party challenging that decision." *Montalvo v. Miss. State. Bd. of Med. Licensure*, 671 So. 2d 53, 56 (Miss. 1996) (citing *Miss. State Bd. of Nursing v. Wilson*, 624 So. 2d 485, 489 (Miss. 1993)).

## DISCUSSION

### I.    The Court of Appeals erroneously reweighed the evidence.

¶17.    Keeping in mind the very limited standard of review detailed above, we find that the Department presented substantial evidence before the hearing officer to support the EAB's finding. The Department introduced statements from four different motorists which showed that Ray had written tickets in addition to the ones he had given them. Though Ray attempted to discredit the initial statements made by the four motorists when he submitted their subsequent affidavits, the affidavits were sworn fourteen months after the motorists' initial statements, and it was within the EAB's discretion, as the factfinder, to determine the appropriate weight to give to each of their various statements.

¶18.    The Department also provided testimony from Investigator Mansell, whereby he noted the "exceptional" number of voided tickets on Ray's control sheets and stated that Ray had written the invalid tickets to pad his weekly reports. The Department also introduced Mansell's interviews with Ray, in which Ray admitted to writing invalid tickets and to "just

9

trying to play a numbers game." And finally, the Department introduced Ray's *own* written statements, in which he admitted writing twenty-to-twenty-five invalid tickets in order to increase his ticket activity.

¶19.    We note that the Court of Appeals upheld a patrolman's discharge for similar conduct in ***Wilburn v. Highway Safety Patrol***, 795 So. 2d 575 (Miss. Ct. App. 2001).  There, Patrolman Ronald Wilburn was discharged by the MHP for record falsification.  ***Id.*** at 576. The MHP relied on statements made by Wilburn in which he admitted intentionally failing to give drivers copies of all the citations he issued against them to make it appear as though he issued more charges than he actually did.  ***Id***. at 577.  Relying on statements made by Wilburn and by two of the drivers, the Court of Appeals affirmed Wilburn's termination for record falsification, determining that there was substantial evidence to support the EAB's decision.  ***Id***. at 578.

¶20.    Here, like Patrolman Wilburn, Ray admitted to issuing invalid tickets in order to increase his ticket activity.  The ***Wilburn*** court found Wilburn's own admissions to be highly persuasive, and we agree here that Ray's admissions to writing invalid tickets provide a strong basis to support the EAB's decision.  And added to Ray's own admissions is the additional testimony offered by the motorists and by Investigator Mansell.  This Court has held that "[t]he EAB 'is the trier of fact as well as the judge of the witnesses' credibility.'" ***Bynum v. Miss. Dep't of Educ.***, 906 So. 2d 81, 90 (Miss. 2004) (quoting ***Miss. Bureau of Narcotics v. Stacy***, 817 So. 2d 523, 26 (Miss. 2002)).

¶21. Ultimately, we find that the Department presented substantial evidence to support Ray's termination, and the Court of Appeals erred by reweighing the evidence and substituting its own judgment. We also find that the EAB's decision was neither arbitrary nor capricious. There is no argument that Ray's termination was outside the scope or power of the EAB, and we find no violation of Ray's statutory or constitutional rights (as detailed more fully below). As such, we affirm the EAB's decision.

## II. Ray's conduct cannot be distinguished from past record-falsification terminations, and his due process rights were not violated.

¶22. Throughout the proceedings, Ray has asserted two main defenses to his termination. First, he attempts to distinguish his actions from others terminated for the same offense. Second, he asserts that the EAB considered evidence outside of the four counts brought against him in making its decision, which violated the EAB's own administrative rule and his due process rights.

### A. Ray's actions cannot sufficiently be distinguished from the actions of other officers terminated for the same offense.

¶23. Ray argues first that the Department has no evidence that he wrote fraudulent or "ghost" tickets, because he claims there is a distinction between warning tickets and "ghost" tickets. Ray emphasizes, and the Department does not dispute, that each of the tickets at issue was written while each of the four drivers was still in his presence. Ray contends that, since the drivers were still in his presence at the time each ticket was written, the tickets were warning tickets—as opposed to "ghost" tickets—and not fraudulent. But the hearing officer rejected this argument, stating:

11

It should be noted that Ray argues that because he wrote the tickets that were not given to the motorists in the patrol car while he still had the motorists stopped that he did not actually falsify tickets. *This tribunal rejects that argument as a distinction without a difference*.

(Emphasis added.)

¶24.　This finding is supported by Colonel Michael Berthay's testimony that troopers are not supposed to issue warning tickets *at all*—regardless of whether the driver is or is not in the trooper's presence:

> Q.　Is there a policy within the Department of Public Safety for issuing hard copy warning tickets?
> A.　No, there is no warning ticket in the agency.　Using the actual traffic citations we use as considered as an affidavit is not a policy, a written policy or departmental policy or District policy or regional policy on using those to write warning tickets.
> . . .
> Q.　During your tenure as a Colonel with the Highway Patrol, was the practice of the Highway Patrol to issue hard copy warning tickets out of the citation book?
> A.　No.　It was not.　That's not what the purpose of the ticket—it doesn't have a warning block on it.　That ticket is designed I think with a combination of Attorney General's and legal division's office.　It's designed specifically for a formal charging.　It's a formal charging document, and it's not designed to alter and change to a warning document.
> Q.　So if I'm understanding you correctly, it's okay to give a verbal warning; is that right?
> A.　Correct.
> Q.　But you do not issue a hard copy warning?
> A.　Correct.

¶25.　We likewise find the warning ticket versus "ghost" ticket distinction unpersuasive. As Colonel Berthay testified, "there is no warning ticket" in the MHP, and it is not the MHP's practice to issue warning tickets.　So the MHP clearly has chosen not to make this distinction, and it is not the role of this Court to do so.

**B.    The EAB did not violate its own administrative rule or Ray's due process rights.**

¶26.   Ray also argues that the EAB considered evidence outside of the charges brought against him, in violation of EAB Administrative Rule XIX(d) and his due process rights. Ray contends, and the Court of Appeals majority agreed, that he was charged only with writing fraudulent tickets to Carpenter, Ulmer, Thomas, and Patterson.  As such, he argues that the EAB erroneously considered his statements that he had written other invalid tickets during his employment with MHP.

¶27.   We agree that it became evident through the investigation and various hearings that the four charges mentioned in the charging document referred to those four motorists.  But that does not mean, as Ray wants this Court to find, that the EAB could not consider his interviews or his written statements as well.

¶28.   EAB Administrative Rule XIX (d) provides:

> The presiding Hearing Officer shall hear or receive evidence only on those reasons and allegations contained *in the responding agency's final disciplinary notice to the employee of such action*.

(Emphasis added.)   And here, the "final disciplinary notice" provided to Ray was the termination letter he received on January 4, 2010, which stated:

> The Board determined that *4 counts of Group Three Offense (falsification of records*, such as but not limited to, vouchers, reports, time records, leave records, employment applications, or other official state documents) is founded.

(Emphasis added.)

¶29. This Court consistently has "accorded great deference to an administrative agency's construction of its own rules and regulations . . . ." ***Miss. State Tax Comm'n v. Mask***, 667 So. 2d 1313, 1314 (Miss. 1995) (citing ***Melody Manor Convalescent Ctr. v. Miss. State Dep't of Health***, 546 So. 2d 972, 973 (Miss. 1989); ***General Motors Corp. v. Miss. State Tax Comm'n***, 510 So. 2d 498, 502 (Miss. 1987)).  Thus, we give strong deference to the EAB's application of its own rules.  And here, Ray's written statements about the twenty-to-twenty-five invalid tickets and his admissions during his interviews clearly are relevant to the "allegations contained" in the "final disciplinary notice."  It is telling that Ray himself could not even eliminate the four motorists from the twenty-to-twenty-five invalid tickets which he admitted:

> Q: And you don't know whether or not the four tickets that you had brought against you in the form of Group 3 charges, you don't have one way or the other – there's no way for you to know, I believe is your testimony, that those tickets may or may not have been the 20 to 25 that you admitted to writing that weren't valid tickets?
> A: I mean, I write a lot of tickets.  I can't remember all of them.

We find no violation of EAB Administrative Rule XIX(d), and this argument is without merit.

¶30. Ray argues finally that the hearing officer's order did not specifically find that he wrote fraudulent tickets to any of the four individuals.  Presiding Judge Irving dismissed this argument as well in his dissent to the Court of Appeals majority, and we agree with his reasoning:

> Finally, in my judgment, while the orders of the hearing officer and the full EAB do not make a specific finding that Ray wrote fraudulent tickets for any named individual, it is clear that the findings made in the orders refer to Ray's

14

ticket-writing conduct with respect to Patterson, Thomas, Ulmer and Carpenter, as well as to his conduct generally with respect to fraudulent ticket writing involving other unnamed individuals. To find that the hearing officer and the full EAB did not find that, on four occasions, Ray falsified an official state document, a traffic ticket, by turning in false tickets for seat belt violations for Patterson, Thomas, Carpenter and Ulmer is to ignore the undisputed facts in this record and to read the orders in a vacuum.

*Ray*, 2014 WL 5334783, at *16 (Irving, P.J., dissenting).

¶31. Ultimately, we find that Ray's due process rights were not violated. This Court has held that agency actions must provide minimum procedural due process, which requires (1) notice and (2) an opportunity to be heard. ***Estate of McCullough v. Yates***, 32 So. 3d 403, 15 (Miss. 2010); ***Harris v. Miss. Valley State Univ.***, 873 So. 2d 970, 85 (Miss. 2004); ***State Oil & Gas Bd. v. McGowan***, 542 So. 2d 244, 48 (Miss. 1989).

¶32. Here, Ray was afforded a pretermination hearing before the Performance Review Board and a posttermination hearing before a hearing officer and then before the full EAB. At both hearings, he was afforded an opportunity to be heard, and he indeed was heard. Additionally, Ray was put on notice for the charges brought against him when he received both the statement of charges and the termination letter from the Department. Both documents explicitly stated that Ray was charged with four counts of falsifying documents.

¶33. We are not persuaded by Ray's argument that he was forced to defend against unknown charges. The Department provided Ray notice of the specific conduct for which he was charged in both documents. And Ray's argument that neither the hearing officer nor the EAB found he wrote fraudulent tickets to the four individuals in violation of his due process rights "represents an unjustified and excessively narrow reading of the orders of the

15

hearing officer and the full EAB that is not supported by the record." *Ray*, 2014 WL 5334783, at *10 (Irving, P.J., dissenting). In sum, Ray was provided notice and an opportunity to be heard, sufficient to satisfy his procedural due process rights.

### CONCLUSION

¶34. The Court of Appeals erred by reweighing the evidence. Because the record provides substantial evidence to support the EAB's decision to uphold Ray's termination, the Court of Appeals should not have reconsidered the evidence and substituted its own judgment for that of the EAB's and the Hinds County Circuit Court. Moreover, Ray's due process rights were not violated, as he received notice and an opportunity to be heard. We therefore reverse the judgment of the Court of Appeals and reinstate and affirm the judgment of the Hinds County Circuit Court.

¶35. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**

16