Frank P. **DAYVAULT**, Appellant,

v.

**BARUCH OIL CORPORATION**, Kenilind Oil & Gas Co., Inc., and Baruch-Nettune & Co., Inc., Appellees.

No. 5182.

United States Court of Appeals Tenth Circuit.

Feb. 23, 1956.

Dan Moody, Austin, Tex., and Frank Bezoni, Midland, Tex. (Clifford N. Bloomfield, Jr., Cheyenne, Wyo., was with them on the brief), for appellant.

W. J. Wehrli, Casper, Wyo., for appellees.

Before MURRAH and PICKETT, Circuit Judges, and MELLOTT, District Judge.

MURRAH, Circuit Judge.

Upon remand of this case, Dayvault v. Baruch Oil Corp., 10 Cir., 211 F.2d 335, the trial court found that the parties to the suit had entered into a joint venture for the acquisition and development of the four oil and gas leases in suit, but as to the so-called Kenilind Lease (No. 078317), the court took the view that all discussions, negotiations and proposals concerning their respective interests therein were merged in the written agreement of June 17, 1949; that by the terms of such agreement and his own testimony, appellant agreed to accept 133,334 shares of stock of the Kenilind Oil and Gas Company as his interest in that lease. The court accordingly denied appellant's claim for an undivided ⅙th interest in the Kenilind lease and gave him instead the tendered shares of stock in the Kenilind Company.

The court also found that appellant was entitled to a ⅙th or 16⅔rds percent undivided interest in the other three leases (Nos. 078316, 078318 and 078319) with a proportionate part of the proceeds of the production therefrom, conditioned however upon the payment by appellant to Baruch Oil Corporation of the sum of $44,188.95 as his proportionate part of expense incurred by Baruch Oil Corporation in the development of the three leases.

Appellant has appealed from that part of the judgment which decreed that he was only entitled to Kenilind stock for his interest in the Kenilind Lease, and from that part of the judgment decreeing that appellant should first pay Baruch Oil Corporation the sum of $44,188.95 within thirty days after finality of the judgment as a condition to the vesting of the undivided 1/6th interest in the other three leases.

With respect to the Kenilind Lease, appellant's contention is to the effect that his agreement to accept stock in the Kenilind Company was conditioned upon the sale of the Company stock to finance the development of the lease, and that when the stock-selling plan failed and it became necessary for Kenilind to convey an undivided interest in the lease to Isbrandtsen for the drilling of a well thereon, the agreement for the stock became inoperative and the oral agreement for the lease interest became effective. In other words, appellant does not attack the integrity of the written contract of June 17, 1949, he simply says that it never became operative.

■ The well known policy rule against the introduction of oral testimony tending to impeach a written contract does not preclude evidence of a parol agreement which is collateral to and independent of the written contract, or which tends to identify, explain or define the subject matter of the written contract. Bushnell v. Elkins, 34 Wyo. 495, 245 P. 304, 51 A.L.R. 13; Yellowstone Sheep Co. v. Diamond Dot Live Stock Co., 43 Wyo. 15, 297 P. 1107, 75 A.L.R. 1151; Garrett v. Ellison, 93 Utah 184, 72 P.2d 449, 129 A.L.R. 666. We have recently said that "Parol evidence is admissible to show a condition precedent relating to the taking effect of a written instrument", and that "A collateral parol agreement that a contract shall become effective only on certain conditions and contingencies is not an oral contradiction or variation of the written instrument * * *." Henderson v. Pierson, 10 Cir., 201 F.2d 740,

741. And see Popplewell v. Stevenson, 10 Cir., 176 F.2d 362; Cf. Jordan v. Hall-Miller Drilling Co., 10 Cir., 203 F.2d 443. And, oral testimony showing the terms and conditions under which a written contract shall become effective is not integrated in the written contract if the writings of the parties are silent with respect thereto and the oral proof is not inconsistent with such writings. See Annotation 70 A.L.R. 752; 20 Am. Jur. Evidence, §§ 1135, 1136, 1137, 1138–1140.

■ To "elucidate and clarify the intentions of the parties" the trial court permitted the appellant to testify in support of his claim that the parties orally agreed to negotiate for the acquisition of the four oil and gas leases, from Irwin and Pearson, and that appellant's interest therein would be an undivided 1/3rd; that they subsequently agreed to convey the title of lease No. 078317 to Kenilind Oil and Gas Company for the purpose of selling stock in that Company to finance the drilling of a well on that lease and for the acquisition and development of the other three leases; and that in the event the stock-selling plan was unsuccessful, an undivided 1/2 interest in the lease would be conveyed to a third party in consideration of the drilling of a well and the acquisition of the other leases, in which event the remaining undivided 1/2 would be divided in equal thirds, or 1/6th of the whole. And, appellant's testimony in that regard was corroborated by Pearson, who testified that he drafted the June 17th contract and the related contract of July 27th, after having been assured by Ursillo that appellant was being carried for an undivided 1/3rd interest in all four leases. And, Ursillo, who the trial court held acted at all times as the agent for Baruch-Nettune Company, also confirmed the arrangement in his testimony as an adverse witness.

The contract of June 17, 1949 between Irwin and Pearson as assignors and Dayvault and Ursillo as assignees, recited that the purpose of acquiring oil and gas lease No. 078317 was to place the title and possession of the same in the Keni-

lind Company "for the purpose of selling stock in the said Company to be used primarily for exploration purposes. * * *." A part of the recited consideration for the conveyance of the lease was the issuance of 133,334 shares of Kenilind Company stock each to Irwin, Pearson and Dayvault. And the plan contemplated the sale of 300,000 shares of the stock to finance the drilling of a well and the acquisition of the other three leases. The stock-selling plan was unsuccessful, no stock was sold and the Kenilind Company advanced no funds for exploration or any other purpose; an undivided 50% interest in all four leases was transferred to a third party in consideration of the cash purchase price of the leases from Irwin and Pearson and the drilling of a well on the Kenilind Lease. The record is not clear whether the 133,334 shares of stock were ever issued to appellant, but if they were, they were never delivered or tendered to him until the advent of this lawsuit. The trial court specifically held that Dayvault had performed all the obligations assumed by him in the whole transaction. It gave binding effect, however, to the written agreement of June 17, 1949, solely on the basis of appellant's testimony in his pre-trial deposition in which he testified in answer to a question on cross-examination, "what about this one tract, this Kenilind tract you were drilling the well on?" Answer: "At that time I was going to—willing to go ahead and take—I approved the Isbrandtsen deal—I was willing to take my stock in the Kenilind but I wanted a ⅙th interest in the other three filings * * * Yes, I agreed to keep the stock in the Kenilind on the one filing but on the other it was supposed to be ⅙th of the whole or ⅓rd of the half * * *." Considered in its context, the answer clearly indicates his agreement to accept Kenilind stock for his interest in the Kenilind Lease after the stock-selling plan had failed and the Isbrandtsen deal had been made.

The parol contract he seeks to establish to prove the inoperative effect of the written contract, ought assuredly be certain and convincing, and in the absence of some reasonable explanation, the trial court was wholly justified in giving conclusive effect to the appellant's testimony, even in the face of subsequent contradictions. See Annotation 80 A.L.R. 624. If his first recollections of the parol agreement were erroneous, his second thought certainly should carry a full, clear and convincing explanation of his aberration. When, however, on the trial of the case, the appellant was confronted with his prior testimony, he admitted having given the answers ascribed to him but offered no explanation except that he "maybe got mixed up." The corroboration of appellant's second version of the transaction, standing alone, is not enough to render the first incredible. In any event, we are unable to say that the trial court's appraisal of the testimony is clearly erroneous.

Under the contract of June 9, 1951, Sinclair Oil and Gas Company became vested with an undivided 51% of all the leases in question, leaving Isbrandtsen 30% and Baruch Oil Corporation (successor to Baruch-Nettune) 19%. No one seeks to repudiate this contract. The judgment of the trial court giving the appellant 16⅔% in the three leases leaves Baruch an undivided 2⅓% therein. On the trial of the case, Baruch testified that the Baruch Oil Corporation had spent $50,375.00 on the development of these partnership leases, and introduced a check in that amount in favor of Sinclair as "only one disbursement". The appellant attacks the judgment of the court charging him with his proportionate share of those expenses on the grounds that the testimony is insufficient to show that the money was spent on these three leases. There is a notation in the left hand corner of the check that it was issued in payment of the "approx. cost well # C1 $26,470.00 and well # C2 $23,905.00.", and no one came forward either on cross examination or countervailing proof to show that the money evidenced by the check was not prudently spent on the partnership

leases. In the absence of any countervailing proof, we certainly cannot say that the positive findings of the trial court that the Baruch Oil Corporation did expend $50,375.00 in the development of the three leases is clearly erroneous.

The judgment of the trial court is affirmed.