In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2137

Michael Rummery,

Plaintiff-Appellant,

v.

Illinois Bell Telephone Company,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 6516--Robert W. Gettleman, Judge.

Argued January 8, 2001--Decided May 11, 2001


   Before Posner, Manion, and Kanne, Circuit
Judges.

   Manion, Circuit Judge.  Michael Rummery
sued his former employer, Illinois Bell
Telephone Company, alleging that he was
terminated in violation of the Age
Discrimination in Employment Act (ADEA),
29 U.S.C. sec. 621 et seq., and the
Americans with Disabilities Act (ADA), 42
U.S.C. sec. 12101, et seq. Illinois Bell
moved for summary judgment. The district
court granted that motion and Rummery
appeals. We affirm.

I.  Background

   Michael Rummery was employed at Illinois
Bell from 1970 to 1992, working in his
last position as a Level I manager
supervising telephone line and equipment
installers. Rummery's direct supervisor,
a Level 2 manager, was Cecil Purnell. The
Level 3 manager in plaintiff's chain-of-
command was Fred Fouse. Mr. Fouse
reported to Mike Tatom, General Manager
of Customer Services.

   In fall 1992, Illinois Bell implemented
a reduction-in-force, called the
Workforce Resizing Program ("WRP"), in
which it eventually terminated 491
employees, including Rummery. Illinois
Bell's WRP explicitly sought to eliminate
between 450 and 500 managers in order to
streamline its business and ultimately

become more competitive in the marketplace. At the time of his termination, Rummery was 41 years old.

Illinois Bell conducted the WRP in two phases. During Phase 1 of the WRP, Illinois Bell identified those managers who were at-risk, the bottom 25% of its managerial staff. On September 9, 1992, Fouse and the Level 2 managers below him, including Purnell, met to evaluate the Level 1 managers. Sixteen managers were identified as at-risk, including Rummery. Once a manager had been identified as "at-risk" he was given three choices: (1) accept a voluntary termination package, (2) apply for a transfer to a craft posi tion, or (3) risk possible termination. Rummery did not opt for one of the first two choices.

In Phase 2 of the WRP, each department was instructed to rank its "at-risk" managers based on specific criteria, including 1992 performance, potential, quality and quantity of experience, specialized training or technical knowledge and formal education. Each department would be given the discretion to weigh these criteria as it saw fit. In late September, Tatom, his Level 3 managers (including Fouse) and a facilitator met to determine the weight given to each criterion and determined that each would be weighed as follows: 50% 1992 performance, 30% experience, skills and knowledge and 20% potential. In preparation for the ranking session, each Level 2 manager completed a Supervisory Update form for each of his Level 1 managers and Purnell completed Rummery's form.

On September 28, 1992, Fouse met with Purnell and his other Level 2 managers to rank the at-risk managers for Phase 2 of the WRP. A facilitator explained the relevant criteria to the Level 2 managers and how they should be weighed. Each manager discussed their Supervisory Updates and asked questions of each other. Each Level 2 manager then separately ranked the fourteen Level 1 managers. A facilitator gathered these individual ranking sheets and then compiled a final ranking of the at-risk managers based on an aggregation and division of the individual rankings.

Rummery's at-risk group included

fourteen persons. The person ranked first was considered most vulnerable to termination. Rummery was ranked third. At the time of the ranking, those participating in the ranking process did not know how many persons would eventually be terminated. Illinois Bell subsequently directed that nine persons on the list be terminated or reassigned to craft positions. Four of the nine obtained craft positions, two others accepted voluntary termination packages which were offered to all managers selected for layoff, and three, including Rummery, were terminated.

Rummery then filed an internal appeal of his discharge. In that appeal, Rummery complained that his 1990 performance evaluation had unfairly prejudiced him in the ranking process. The investigator reviewed this evaluation and interviewed Rummery's former supervisor. After an investigation, the Appeals Committee voted to deny his appeal. Rummery then requested a craft position, but Illinois Bell denied that request./1

Rummery then sued Illinois Bell alleging that he was terminated in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. sec. 621 et seq., and the Americans with Disabilities Act (ADA), 42 U.S.C. sec. 12101, et seq. Illinois Bell moved for summary judgment, which the district court granted. Rummery appeals that portion of the district court's decision regarding his ADEA claim./2

II. Discussion

We review a grant of summary judgment de novo, considering the facts in the light most favorable to the non-moving party. See Ransom v. CSC Consulting, Inc., 217 F.3d 467, 468 (7th Cir. 2000). Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The ADEA prohibits intentional discrimination against persons who are

age 40 or over. See 29 U.S.C. sec. 623(a)(1); 29 U.S.C. sec. 631 (a). A plaintiff may show age discrimination directly or, as Rummery attempts to do here, by the indirect, burden-shifting approach set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this latter method, the plaintiff must first set forth a prima facie case of discrimination. Once he does so, the employer must articulate a non-discriminatory reason for termination. The plaintiff must then present evidence that would show that the proffered reason was pretextual. See id., 411 U.S. at 802-04; Paluck v. Gooding Rubber Co., 221 F.3d 1003, 1011-14 (7th Cir. 2000).

In order to set forth a prima facie case of age discrimination under the ADEA, a plaintiff must show: (1) he was 40 or older, (2) he was performing his job satisfactorily, (3) he was discharged, and (4) substantially younger, similarly situated employees were treated more favorably. Ransom, 217 F.3d at 470; Paluck, 221 F.3d at 1012. Rather than deciding whether Rummery had established a prima facie case, the district court instead skipped ahead, concluding that Illinois Bell had articulated a legitimate reason for his termination. Specifically, the district court concluded that "the facially age-neutral procedures defendant employed in conducting the WRP provide a legitimate, non-discriminatory reason for plaintiff's termination." See Jackson v. E.J. Brach Corp., 176 F.3d 971, 983 (7th Cir. 1999) (finding that a reduction-in-force was a legitimate nondiscriminatory reason for laying off an employee). Because Rummery failed to present evidence that could enable a jury to find that this explanation was a pretext for age discrimination, the district court granted summary judgment to Illinois Bell.

Like the district court, we will assume, without deciding, that Rummery established a prima facie case of discrimination. See Abioye v. Sundstrand Corp., 164 F.3d 364, 368 (7th Cir. 1998) ("When the defendant has proffered an explanation for termination that the court determines to be non-pretextual, the court may avoid deciding whether the plaintiff has met his prima facie case

and instead decide to dismiss the claim because there is no showing of pretext."). Instead, we focus on Rummery's argument on appeal that there is a genuine issue of material fact regarding whether Illinois Bell's proffered reason for terminating him was pretextual. Even if a reduction in force is otherwise legitimate (i.e., not simply an excuse to terminate older workers), a plaintiff may establish pretext by showing that the specific reasons given for including him in the reduction were pretextual. See Paluck, 221 F.2d at 1012-13. This requires Rummery to present evidence that could show that Illinois Bell did not honestly believe the reasons it gave for his termination. Id. at 1013.

Rummery argues that he presented sufficient evidence of pretext by showing that he was more qualified than a younger worker who was not terminated. He also asserts that Illinois Bell's destruction of certain documents used in the WRP rating process gives rise to an inference that it committed age discrimination. Finally, he relies on statistical evidence to support his claim of pretext. We examine each of these arguments in turn.

A.  Younger Worker's Qualifications

First, Rummery argues that he presented evidence indicating that he was better qualified than Taylor, a younger employee (age 25), who was not terminated, and that this constitutes sufficient evidence of pretext. However, this only goes to show the prima facie case which, as noted, we assume Rummery has established. See Ransom, 217 F.3d at 470, n. 1 (whether younger employees were less qualified, and yet not terminated, goes to the prima facie case).

In any case, the evidence Rummery relies upon does not support his position that Illinois Bell did not honestly believe him to be less qualified than Taylor. Rummery points to the testimony of Purnell, the manager who ranked the at-risk group which included Rummery. While he did say that Rummery was "head and shoulders above [Taylor] on a technical level," this merely indicates that Rummery was more qualified than Taylor in his technical expertise, something acquired through years of experience. But

it does not establish that overall Rummery was more qualified than Taylor. Purnell testified that Taylor had potential as a manager, whereas Rummery was performing "no better or worse than in the past." Rummery responds that, since Purnell did not supervise him in 1991 and admitted that he did not know about his performance before 1991, Purnell could not have made that assessment in good faith. However, without more, this assertion does not create a reasonable inference that Purnell lied about the reasons given in his evaluation. Essentially all Purnell is saying is that Rummery has reached a certain level of competence and has remained at that level.

In any case, this evidence does not create a genuine issue of material fact regarding pretext because it does not cre-ate a reasonable inference that Purnell, or any other decision-maker at Illinois Bell, lied about the reasons given for his termination. As this court has often noted, "we deal with small gradations, with an employer's subjective comparison of one employee to another, and it is incumbent upon us to remember that what is at issue is not the wisdom of an employer's decision, but the genuineness of the employer's motives." Testerman v. EDS Technical Products Corp., 98 F.3d 297, 304 (7th Cir. 1996). "Even an employer's erroneous decisionmaking, exhibiting poor business judgment, is not sufficient to establish pretext." Abioye, 164 F.3d at 368. Therefore, even if Illinois Bell mistakenly but honestly believed that Rummery was less qualified than Taylor, that is still not enough for Rummery to avoid summary judgment. Rather he must present evidence that Illinois Bell did not believe its own evaluation. The district court correctly concluded that Purnell's testimony, standing alone, does not demonstrate that he had distorted the evaluations in order to get rid of an older employee.

Before closing, we note that even if we assume that Illinois Bell had erred in ranking Taylor as more qualified than Rummery, pretext is still not established. Illinois Bell terminated the nine lowest-ranked persons from the list of fourteen. Accordingly, even if Taylor (who was ranked eleventh in the list of

fourteen) had been the first person laid off, Rummery (then ranked fourth instead of third) would have been terminated anyway because he still would have been ranked lower than several other managers. In fact, Rummery was ranked lower than six other managers who were his age or older. Rummery does not present any evidence that Illinois Bell did not believe that any of these workers were less qualified than Rummery. Thus, his attempts to prove age discrimination by comparing himself to Taylor are unavailing.

## B.  Illinois Bell's Failure to Produce Certain Documents

Next, Rummery claims that Illinois Bell's failure to produce certain documents constitutes evidence of pretext. Rummery points to Illinois Bell's destruction of the ranking sheets, manager's notes and evaluation notes that were prepared during the ranking process. The ranking sheets and manager's notes were filled out by each manager and used to prepare one summary sheet averaging out the rankings for each individual. The evaluation notes were informal notes that each participant in the ranking session may have taken. All of these documents were destroyed, while the summary sheet containing the final rankings was not.

Rummery argues that the destruction of these records gives rise to the inference that the evidence would have been favorable to him had it been produced. Rummery claims that the inference is especially proper since EEOC regulations require employers to keep "[a]ny personnel or employment record made or kept by an employer (including but not necessarily limited to . . . records having to do with . . . lay-off or termination . . .) . . . for a period of one year from the date of the making of the record or the personnel action involved, whichever occurs later." 29 C.F.R. sec. 1602.14.

While Illinois Bell admits that the documents were destroyed intentionally, to draw an inference that the records favored Rummery requires us to conclude that the documents were destroyed in "bad faith," i.e., that the document destruction was "for the purpose of hiding adverse information." Mathis v.

John Morden Buick, Inc., 136 F.3d 1153, 1155 (7th Cir. 1998). But Rummery has offered no evidence, other than his own speculation, that they were destroyed to hide discriminatory information. The district court did not rule explicitly on this point, concluding instead that the EEOC regulation only requires the employer to retain the record itself, not the processes that produce that record. Since Illinois Bell retained and produced the final ranking sheet, it reasoned that Illinois Bell had complied with the regulation. The district court concluded that, standing alone, Illinois Bell's system of destroying the ranking sheets does not imply that it used age as a criteria in reaching the ultimate rankings. See also Jeffries v. Chicago Transit Authority, 770 F.2d 676, 681 (7th Cir. 1985) (finding that the CTA's loss or destruction of records through a business retention-destruction schedule does not impute any bad faith or consciousness of guilt). Employers are not required to keep every single piece of scrap paper that various employees may create during the termination process. It is sufficient that the employer retains only the actual employment record itself, not the rough drafts or processes which may lead up to it. Thus, Rummery cannot rely on this to create a genuine issue of material fact precluding summary judgment.

Rummery also points to Illinois Bell's failure to produce Taylor's final interim performance review, which Bell claimed had been lost. Rummery claims that this review may have shown that Taylor was not qualified and that his performance had not improved, as Purnell testified it had. The district court correctly noted that Rummery produced no evidence that Illinois Bell had intentionally destroyed this document, that the raters had actually reviewed the semiannual evaluations in their ranking process, or if they did, how these factored into their ultimate decisions. Illinois Bell's failure to locate and produce this record does not create a triable issue of fact. As noted above, even if Taylor was arguably less qualified than Rummery, Rummery still did not present evidence that his own termination was based on pretext, thus implying that age was the real reason.

C.  Statistical Evidence

   Lastly, Rummery argues that the district court incorrectly disregarded his statistical evidence as evidence of pretext./3 Specifically, Rummery submitted statistical evidence that the displacement rate for employees forty and older was 14.55% (413 out of 2,839) as compared to a 7.39% displacement rate for workers under forty (78 of 1,056). His expert witness, Dr. Dennis Brady, a statistician, concluded that these numbers provide evidence that Illinois Bell's WRP had a statistically significant adverse impact upon older employees. Rummery contends that this evidence created a genuine issue of fact which should have precluded the district court's grant of summary judgment to Illinois Bell.

   Initially, we note that, although Rummery claims that the district court improperly ignored the statistical evidence altogether, the district court thoroughly considered the evidence and carefully responded to each of the parties' arguments regarding its proper use./4 In so doing, the court correctly held that, while statistics may be used to demonstrate that the employer's proffered reason for discharge is pretextual, standing alone they are not likely to establish a case of individual disparate treatment. See Adams v. Ameritech Services, Inc., 231 F.2d 414, 423 (7th Cir. 2000). Indeed, Dr. Brady himself admitted that his statistics simply show a disparate impact, which is not sufficient to show a violation of the ADEA./5 To establish disparate treat-ment, the statistics must be accompanied by other evidence. Statistical evidence must also take "into account nondiscriminatory explanations." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 616 (7th Cir. 2000). Here, the district court correctly concluded that, by itself, Rummery's proffered statistical evidence did not prove that he had been terminated based on his age. Thus, Rummery's statistics do not create a triable issue of fact which should have precluded summary judgment.

III.  Conclusion

   Illinois Bell presented evidence that its decision to terminate Rummery was

justified by its legitimate business decision to implement a reduction-in-force. Rummery did not present sufficient evidence to raise a triable issue of pretext. Therefore, Rummery failed to establish evidence that Illinois Bell improperly terminated him based on his age, and the district court properly granted Illinois Bell summary judgment. We affirm.

FOOTNOTES

/1 Rummery does not appeal the district court's finding that Illinois Bell did not discriminate against him on the basis of age by failing to reassign him to a craft position. Accordingly, we need not address the district court's ruling on that claim.

/2 Rummery does not appeal the district court's conclusion that he did not establish a claim under the ADA. Accordingly, we need not address the district court's ruling on that claim.

/3 Rummery had also alleged a claim of "pattern or practice" discrimination (as distinguished from a case of individual discrimination), but he does not argue this issue on appeal, and therefore we do not address it.

/4 Illinois Bell sought to strike Dr. Brady's affidavit. The district court eventually denied this motion as moot, given its grant of summary judgment for Illinois Bell.

/5 Rummery's claim can only be based on disparate treatment because "disparate impact is not a theory available to age discrimination plaintiffs in this circuit." Adams, 231 F.2d at 422. See also Equal Employment Opportunity Commission v. Francis W. Parker School, 41 F.3d 1073, 1078 (7th Cir. 1994), cert. denied, 515 U.S. 1142 (1995).