WILSON, J.,
FOR THE COURT:
¶ 1. In June 2013, the Mississippi Department of Public Safety (MDPS) announced that there was an opening for the position of lieutenant in the driver services division of the Mississippi Highway Safety Patrol (MHSP). MDPS interviewed six qualified applicants for the position and selected Master Sergeant Anthony Cunningham—a 51-year-old African-American male with 26-plus years of service at MDPS—for the promotion. Master Sergeant Ola Kirk—a 57-year-old African-American female with 25.5 years of service at MDPS—was identified as the first “alternate choice” for the promotion, but she was not promoted.
¶ 2. Kirk filed a grievance, alleging that she was denied the promotion because of *149 her sex. MDPS denied the grievance, and Kirk appealed to the Mississippi Employee Appeals Board (EAB). Following a two-day hearing before an EAB hearing officer, the hearing officer entered an order denying Kirk’s claim. The hearing officer found that MDPS had articulated a legitimate, nondiscriminatory reason for its decision to promote Cunningham rather than Kirk. The hearing officer further found that Kirk failed to'meet her burden of proof that MDPS’s stated reason was a pretext for intentional discrimination. The en banc EAB affirmed the hearing officer’s findings and decision, and the Hinds County Circuit Court subsequently affirmed the decision of the EAB.
¶ 3. On appeal to this Court, Kirk argues that MDPS failed , to articulate a legitimate, nondiscriminatory reason for its decision. She also argues that she was clearly more qualified than Cunningham, that MDPS’s stated reason for promoting Cunningham was a pretext for intentional discrimination, and that the EAB’s décision is not supported by substantial evidence. As to the former issue, we agree with the EAB that MDPS’s stated reason for its decision—that Cunningham scored higher than Kirk on an interview designed to test the candidates’ knowledge of subjects relevant to the open position—is a legitimate and nondiscriminatory reason for an employment decision. On the latter issue, the EAB is the trier of fact and the judge of witnesses’ credibility, and we find that its decision denying Kirk’s claim is supported by substantial evidence. Accordingly, we affirm.
FACTS AND PROCEDURAL HISTORY
¶4. -In May 2013, Lieutenant Anthony Wright retired from the driver services division of MDPS. On June 7, 2013, MDPS distributéd a “Position Open Notice” seeking applications to fill Wright’s position. The notice stated that “[a]ny sworn officer within the [MHSP] meeting the qualifications [could] apply.” The primary minimum qualifications for the position were seven years of service as a sworn officer with MDPS, including at least two years “in line or functional supervision as a master sergeant.” The notice stated that there would be oral interviews for qualified applicants, and it identified potential sources of interview questions, including laws and policies related to the driver services division.
¶ 5. Six applicants were deemed qualified and invited to oral interviews, which were held on July 17, 2013. The candidates included Kirk, Cunningham, and four other men. Kirk and 'Cunningham are both African-American. Kirk was fifty-seven years old at the time of the interviews, whereas Cunningham was fifty-one.. Both Kirk and Cunningham have four-year college degrees, and both have been employed by MDPS since 1987. Both have served in supervisory roles and served as acting lieutenant in the driver services division subsequent to Wright’s retirement. Kirk was promoted to master sergeant in 2002, while Cunningham was promoted to" that rank on April 1, 2010. Cunningham had received five work-related commendations, while Kirk had received one. The other four candidates had between seven-teeh and twenty-six years of service at MDPS and between six and thirteen years of service at the rank of master sergeant.
¶ 6. The director of the driver services division, Major Christopher Gillard,[1] chaired the interview panel. Captain Prin-tiss Parker and Lieutenant Jay Kelly, who *150 also serve .in the driver services division, were also on the panel. The panel drafted a list of six questions to ask the applicants during their oral interviews. All six questions related to the operations of the driver services division or laws, policies, or procedures applicable to. the division. The questions were not distributed to any of the candidates prior to the interviews.
¶ 7. At the beginning of each candidate’s interview, Gillard gave a general overview of how the interview would proceed, and the panel members then took turns asking the six questions. The panel members scored each candidate’s answer to' each question on a scale of 1 to 5. After each candidate left the room, the panel would compare scores and discuss the reasons for any differences of more than one point on a particular question,- The candidate’s total score was then tallied based on each panel member’s scores.
¶ 8. After the interviews, Gillard provided Colonel Donnell Berry, Director of the MHSP, with a list of the top three applicants for the position. Gillard identified Cunningham as his “first choice” for promotion and Kirk as his first “alternate choice.” Gillard ranked the .candidates based solely on their interview scores. Cunningham received the highest score (73 out of 90 possible points), while Kirk received the second-highest score (64). Berry accepted . Gillard’s recommendation and promoted Cunningham,
¶ 9. On July 24, 2013, Kirk filed a grievance, with MDPS alleging that she had been denied the promotion based on her race, age, or gender. After MDPS denied her claim, Kirk appealed to the EAB. A hearing was held before an EAB hearing officer on March 7 and August 21, 2014. Kirk, Cunningham, Gillard, Parker, Kelly; and Berry all testified. During the hearing, Kirk’s attorney stated that' she was only pursuing her claim of gender discrimination, as Cunningham was also African-American and at least forty years of age. MDPS maintained that Cunningham was promoted because he scored higher on his interview than Kirk, not because of discrimination,
¶ 10. At the hearing, Gillard testified that the promotion was governed by MDPS General Order No. 22/02, which governs “appointments” to “specialized positions.” The Order states that its purpose “is to .provide the Director of [MHSP] and the Commissioner of Public Safety necessary ... .flexibility in filling staff, technical, and special duty positions taking into account a candidate’s skill, knowledge, and professional experience.” The Order pro-rides that candidates' for such positions must hold the rank of master sergeant or higher and be eligible for promotion to lieutenant. The Order further provides that, after reviewing candidates’ qualifications, the Director of MHSP, with the approval of the Commissioner, will make appointments to fill specialized positions. Finally, the Order provides that, notwithstanding any other provisions of the Order or General Order No. 22/01,[2] the Commissioner, after consulting with the Director of MHSP, “shall have the ability to promote in rank sworn personnel possessing skill, knowledge, and professional experience to speciality positions.”
¶ 11. Gillard testified that applicants who satisfied the minimum qualifications set forth in the open-position notice were invited to interview. He also testified that his recommendation to Colonel Berry was based solely on the candidates’ interview *151 scores because all the candidates interviewed “had already met the minimum qualifications.” Gillard testified that the panel ranked Cunningham first and Kirk second based on their interviews and not because of gender, age, or race. MDPS stipulated, and all of its witnesses testified, that Kirk is an excellent employee and was qualified for the position. MDPS simply defended its decision to promote Cunningham based on his superior interview scores.
¶12. The interview questions and the interviewers’ scoring sheets were introduced into evidence. Cunningham received a higher overall score than Kirk primarily because the interviewers scored his answers higher on question 2, which concerned eligibility for a learner’s permit, and question 4, which concerned permanent disability cards. The comments on the interviewers’ scoring sheets are limited. The interviewers noted that Kirk “did not answer questions completely” or “fully.” The interviewers: noted Cunningham’s “knowledge and experience of driver services.”
¶ 13. Gillard and Parker both testified that Kirk received a low score on question 2 because she started to answer correctly but’ then changed her answer and answered incorrectly. Gillard and Parker both testified that Kirk received a low score on question 4 because she stated that she did not know the answer. Kelly testified on the second day of the EAB hearing, thirteen months after the interviews. He could not recall the specifics of the candidates’ answers and could only testify generally as why he would have scored an answer lower or higher. Gillard testified that, immediately after the interviews, he “personally” “shredded” any additional notes taken by the interviewers. He testified that he did so because the questions might be used again, and he did not want the answers to be disclosed. Gillard, Parker,’ and Kelly testified that the interview process for this promotion was consistent with MDPS’s usual practices. All denied that any candidate’s gender, race, or. age influenced the interview process or their scoring.
¶ 14. Kirk testified that she believed that she was the most qualified candidate, that she doubted that Cunningham could have scored higher than her on a fair test, and that she believed she should have been •promoted rather than him. However, she acknowledged that she did not hear Cunningham’s answers to the questions. She also acknowledged that the test questions were fair and “all ... came straight from the policy and procedure book.” She also admitted that she was. concerned about whether she answered question 4 correctly. Kirk also testified that there should have been a female on the interview panel, although she acknowledged that there were-no other females in the driver services division. Kirk testified that she believed she had “been discriminated against by [MDPS],” ,but she was unwilling to .say that any of the interviewers or .Colonel Berry .were “sexist.” When pressed, she speculated that Parker had. discriminated against her, but only because he scored her lower than the other interviewers. Although all three interyiewers scored Cunningham higher than Kirk, Kirk believed that Parker “was not fair about [her] grading-”
¶ 15, Following, the hearing, the EAB hearing officer permitted the parties, to submit briefs and then entered an order with detailed findings, of fact and conclusions of law. He found that Kirk had established a prima facie case of discrimination because she was a member of a protected class (a female), she applied for and was qualified for the promotion, she did not receive the promotion, and a person out *152 side of the protected class (Cunningham, a male) received the promotion. However, the hearing officer also found that MDPS articulated a legitimate, nondiscriminatory reason for its decision to promote Cunningham (his higher interview scores). Finally, the hearing officer found that Kirk failed to,satisfy her burden of proof and persuasion that she was denied the promotion because of her gender and, that MDPS’s stated reason for promoting Cunningham was a pretext. Accordingly, the hearing officer dismissed Kirk’s claim with prejudice.
¶ 16. Kirk appealed the hearing officer’s decision, but the en banc EAB affirmed the hearing officer’s findings and conclusions. Kirk then appealed to circuit court, arguing that the EAB’s decision was arbitrary and capricious, was not supported by substantial evidence, and violated her constitutional and statutory rights. However, the circuit court affirmed the EAB’s decision. Kirk again filed a timely notice of appeal. On appeal, Kirk identifies six issues, all of which relate to her two basic arguments that MDPS failed to articulate a legitimate, nondiscriminatory reason for its decision to promote Cunningham and that she met her burden of proof and persuasion that MDPS’s stated reason for its decision was a pretext for discrimination. We address Kirk’s arguments below.
DISCUSSION
¶ 17. Title VII of the Civil Rights Act of 1964 prohibits an- employer from discriminating against an employee because of the employee’s gender. 42 U.S.C. § 2000e-2(a)(l). “The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff.” Alvarado v. Tex. Rangers, 492 F.3d 605, 611 (5th Cir. 2007) (quoting Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir. 2004)). Mississippi law also prohibits intentional discrimination against a state service employee because of the employee’s gender. Miss. Code Ann. § 25-9-149 (Rev. 2010); see Miss. Emp’t Sec. Comm’n v. Collins, 629 So.2d 576, 581 (Miss. 1993).
¶ 18. Kirk’s claim of gender discrimination is subject to “a precise scheme, or allocation, of the burdens of proof (both production and persuasion).” Cash Distrib. Co. v. Neely, 947 So.2d 286, 292 (¶21) (Miss. 2007). This analysis,'often referred to as the “McDonnell Douglas burden-shifting framework,” proceeds in three steps. See id. at 292-93 (¶¶ 22-23) (discussing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)); see Alvarado, 492 F.3d at 611 (recognizing that the same framework applies to gender-discrimination claims under Title VII when there is “no direct evidence of discrimination”); Miss. Dep’t of Human Servs. v. Baum, 730 So.2d 58, 63 (¶¶ 18-19) (Miss. 1998) (applying the same framework to a state employee’s grievance alleging discrimination); Reid v. Miss. State Hosp./Miss. Dep’t of Mental Health, 53 So.3d 823, 824-25 (¶ 8) (Miss. Ct. App. 2011) (same). First,, the employee must establish a prima facie case of discrimination. This required Kirk to show that she was a member of a protected class, that she was qualified for the promotion at issue, that she was not promoted, and that a person outside her protected class was promoted. See Alvarado, 492 F.3d at 611. MDPS does not dispute that Kirk established a prima facie case, which created an initial “presumption” of “impermissible discrimination.” Neely, 947 So.2d at 297 (¶ 37).
¶ 19. In the second step of the McDonnell Douglas framework, the employer bears “the burden of producing an explanation to rebut the prima facie case— *153 i.e., the burden of producing evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason.” St. Mary’s Honor Ctr. v. Hicks, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (quotation marks omitted). The employer’s burden at this stage is a “burden of production” only and “can involve no credibility assessment.” Id. at 507, 509, 113 S.Ct. 2742. This burden of production “necessarily precedes the credibility-assessment stage.” Id. at 509,113 S.Ct. 2742. The defendant’s burden at the second step is only “to introduce evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.” Id.
¶20. The third step of the McDonnell Douglas framework is the “credibility-assessment stage.” Id. If the defendant carries its step-two burden of production, “the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.” Neely, 947 So.2d at 293 (¶ 23) (quoting Burdine, 450 U.S. at 253, 101 S.Ct. 1089). “The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.” Id.
¶ 21. The “trier of fact” in this ease was the EAB. On appeal from a decision of the EAB, a “reviewing court must affirm the [EAB] if [its] decision was (1) supported by substantial evidence; (2) not arbitrary or capricious; (3) within the scope or power of the agency; and (4) not a violation of the aggrieved party’s constitutional or statutory rights.” Ray v. MDPS, 172 So.3d 182, 187 (¶15) (Miss. 2015). “[The Supreme] Court has held that substantial evidence means evidence which ... affords a substantial basis of fact from which the fact in issue can be reasonably inferred.” Id. at 187 (¶ 16) (quotation marks omitted). “Substantial evidence exists so long as there is evidence that a reasonable mind might accept as sufficient to support a conclusion.” Id. “The reviewing court is not authorized to substitute its judgment for that of the [EAB] where there is substantial (that is, more than a scintilla of) evidence to support the finding.” Id. (quoting Miss. Pub. Serv. Comm’n v. Merchants Truck Line Inc., 598 So.2d 778, 782 (Miss. 1992)) (brackets omitted). The reviewing court also must bear in mind that “[t]he EAÍ3 is the trier of fact as well as the judge of the witnesses’ credibility)” Id. at 188 (¶ 20) (quotation marks omitted); accord, e.g., Miss. Dep’t of Wildlife, Fisheries & Parks v. Bradshaw, 196 So.3d 1075, 1082-83 (¶ 19) (Miss. Ct. App. 2016).
¶22. Below, we first address whether MDPS met its step-two burden of production, i.e., its burden to articulate a legitimate, nondiscriminatory reason for its decision to promote Cunningham rather than Kirk. We thén consider whether there is substantial evidence to support the EAB’s finding, as the trier of fact, that Kirk failed to meet her - ultimate burden of proving that MDPS’s stated reason was a pretext and that MDPS intentionally discriminated against her and refused to promote her because of her gender.
I. MDPS articulated a legitimate, nondiscriminatory reason for its decision to promote Cunningham rather than Kirk.
¶23. MDPS’s stated reason for promoting Cunningham rather than Kirk is that he scored higher on his interview, which tested the candidates’ knowledge of subjects related to the open position of lieutenant in the driver services division. 'In support, MDPS introduced evidence of the interview questions that candidates *154 were asked and interviewers’ scoring sheets. As discussed above, members of the interview panel also testified as to why Kirk received a lower score on two questions, namely, that she answered one question incorrectly after changing her answer, and she did not know the answer to another question. Kirk acknowledged that the interview questions were fair and tested knowledge relevant to the open position, and she also admitted that she was concerned about one of her answers for which she received a low score. As noted above, Kirk received the second-highest score of the six candidates that were interviewed; however, Cunningham received the highest score, and MDPS maintains that he was promoted for that reason.
¶ 24. It should be evident that the relative quality of candidates’ answers to interview questions designed to test their knowledge relevant to the open position is a .legitimate, nondiscriminatory reason for an employer’s decision. Caselaw recognizes this common-sense proposition. See, e.g., Harris v. Mayor & City Council of Baltimore, 429 Fed.Appx. 195, 203-04 (4th Cir. 2011); Sutherland v. Mich. Dep’t of Treasury, 344 F.3d 603, 616 (6th Cir. 2003). Therefore, MDPS met its step-two “burden of production.” Hicks, 509 U.S. at 507, 113 S.Ct. 2742.
¶ 25. To reiterate, this step of the McDonnell Douglas framework “can involve no credibility assessment.” Id. at 509, 113 S.Ct; 2742. The defendant’s only burden is “to introduce evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.” Id. If the trier of fact believed that MDPS promoted Cunningham because he provided the best answers to questions. designed to test the candidates’ knowledge of relevant subjects, then obviously that would permit a conclusion that there was a nondiscriminatory reason for MDPS’s decision to promote Cunningham rather than Kirk.
.¶26. It is true, as Kirk and the dissent argue, that a “subjective reason” for an employer’s decision “is a legally sufficient, ■ legitimate, nondiscriminatory reason” only “if the [employer] articulates a clear and reasonably specific factual basis upon which-it based its subjective opinion.” Chapman v. AI Transp., 229 F.3d 1012, 1034 (11th Cir. 2000) (en banc). MDPS presented a sufficiently specific basis for -its decision in this .case. In Chapman, the en banc Eleventh Circuit held that the employer met its burden based on interviewers’ testimony that the plaintiff did not give “sharp” or “concise” answers, “did not take an aggressive approach in asking ... questions about the position,” and “wasn’t very clear about” his reasons for leaving prior jobs; and that the employee who was promoted just “made a better presentation of himself and his skills.” Id. at 1035. One interviewer testified that he did not “have an answer to” why one candidate did better than the other; he “just ... - felt [he] had more confidence in [the promoted employee] in the way he presented his, work history.” Id.
¶ 27. The reasons provided by MDPS in this case were at least as clear and specific as those provided in Chapman. Again, MDPS introduced evidence of the interview, questions asked, which Kirk admitted were fair and relevant, and evidence that Kirk answered two questions incorrectly. MDPS provided a specific, nondiscriminatory reason for. its decision to. promote Cunningham, and Kirk had an opportunity to respond and offer evidence that it was a pretext. Whether MDPS’s proffered. reason was the true reason for.its decision or a pretext was- then an issue for the trier of fact to decide.
*155 ¶28. For the same reason, Kirk’s and the dissent’s reliance on Alvarado v. Texas Rangers, supra, is misplaced. In Alvarado, the employer relied on interview scores but offered no “explanation []or evidence of how or why the interviewers arrived at those scores.” Alvarado, 492 F.3d at 617. Unlike this case, the employer in Alvarado could not “point[ ] to any .,.. testimony by the [interviewers] that would shed any light on why they scored [the plaintiff] and the other candidates the way they did.” Id. Here, MDPS provided not only the candidates’ scores but also reasons why Kirk scored lower than Cunningham. This is sufficient to distinguish Alvarado and to meet the step-two burden, of production. See Harris, 429 Fed.Appx. at 204. At step two of the McDonnell Douglas framework,, the employer’s only burden is to provide a nondiseriminatory explanation for its decision.
¶ 29. Before moving to step three of the McDonnell Douglas framework, we briefly address .two additional points that the dissent raises under the heading of step two. First, the dissent makes repeated claims along the lines that MDPS “completely failed to follow General Order 22/02.” Post at (¶ 72). In .support .of these .claims, the dissent cites the Order’s statement that the Commissioner of MDPS, after consulting with the Director of MHSP, “shall have the ability to promote in rank sworn personnel possessing skill, knowledge, and professional experience to speciality positions.” Post at (¶45). The dissent follows with conclusory assertions that the selection process used in this case did not achieve this end. However, nothing in the text of 22/02 purports to prohibit the process used by MDPS in this case. Indeed, reliance on minimum .experience requirements followed by a test of the candidates’ knowledge relevant, to the vacant position is entirely consistent with the stated purpose of 22/02. Moreover, Kirk’s claim for relief before the EAB was not that MDPS failed to follow agency procedures. Rather, she alleged intentional discrimination based on gender.[3] Therefore, even if MDPS somehow deviated from 22/02, that issue,would be, at most, relevant to the step-three question whether its stated reason for the promotion was a pretext for illegal discrimination. A deviation from agency procedures does not transform a logically and facially nondiscriminatory reason into a discriminatory one.
¶ 30. The dissent also complains that MDPS’s interview process “lacked safeguards,” “had no scoring rubric,” and relied on “subjective grading.” Post at (¶¶ 41, 59). However, there is nothing inherently wrong or discriminatory about any of these things. Every day, all kinds of employers make employment decisions based on “subjective” evaluations .without scoring rubrics or other “safeguards.” For example, that is what judges do when hiring law clerks and other staff. Not every employment decision is reducible, to a multiple choice test or a purely objective scoring system.[4] To be clear, this is not to dismiss the possibility that subjectivity, informality, or a lack of documentation may, in some cases, serve to obscure invidious discrimination. However, this-possibility is an issue for the trier of fact at the third step of the McDonnell Doug *156 las framework. A determination that Cunningham’s answers to interview questions demonstrated greater knowledge of the relevant subject matter is a legitimate, nondiscriminatory reason even if it depends on interviewers’ subjective assessments of the candidates’ answers.
¶ 31. In summary, “[b]y producing evidence (whether ultimately persuasive or not) of nondiscriminatory reasons, [MDPS] sustained [its] burden of production,” which brings us to the end of step two. Hicks, 509 U.S. at 509, 113 S.Ct. 2742. Step two of the McDonnell Douglas framework “can involve no credibility assessment,” “[f]or the burden-of-production determination necessarily •precedes the credibility-assessment stage.” Id. “The factfinder’s disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may ... suffice to show intentional discrimination” and “permit the trier of fact to infer the ultimate fact of intentional discrimination.” Id. at 511, 113 S.Ct. 2742. However, that is an issue for the trier of fact under step three of the framework. Id.
II. The EAB’s decision is supported by substantial evidence.
¶32. In an employment discrimination case, the ultimate question for the trier of fact is whether the plaintiff has proven, by a preponderance of the evidence, that the employer’s stated reason for the adverse employment decision was a pretext for impermissible discrimination. See Neely, 947 So.2d at 293 (¶23). Thus, the basic issue for the trier of fact is whether the employer’s explanation for its decision, as presented through witnesses and other evidence, is credible and believable. See Hicks, 509 U.S. at 507-11, 113 S.Ct. 2742. When a state-service employee appeals to the EAB, “[t]he EAB is the trier of fact as well as the judge of the witnesses’ credibility.” Ray, 172 So.3d at 188 (¶ 20) (emphasis added; quotation marks omitted). A reviewing court may not “reweigh[ ] the evidence” or “substitute] its own judgment” for that of the EAB; rather, the court must defer to the EAB’s factual findings and affirm if there is “substantial evidence” in the record to support its decision. Id. at (¶ 21).
¶ 33. In this case, the findings and decision of the EAB are supported by substantial evidence. All three members of the MDPS interview panel testified that Cunningham scored higher than Kirk on the interview and was recommended for promotion because he provided superior answers to the interview questions—and not because of Kirk’s gender. The EAB, not this Court, is the judge of these witnesses’ credibility. The hearing officer also found that Kirk’s qualifications did not compel or support an inference of discrimination because “Cunningham also had significant qualifications and experience.” The hearing officer observed that “[t]he ultimate question in every employment discrimination case is whether the [p]laintiff was the victim of discrimination.” On this issue, the hearing officer found that Kirk failed to meet her burden of proof that MDPS’s stated reason for promoting Cunningham “was untrue.” And the hearing officer found that “Kirk ... failed to meet her burden of proof that she was intentionally denied the ... promotion because of her sex.” The EAB affirmed the hearing officer’s findings and decision, and we must also affirm the decision of the EAB, as its decision is supported by substantial evidence.[5]
*157 ¶ 34. Kirk argues that her qualifications compel an inference of discrimination, but the hearing officer and the EAB found otherwise, and the EAB’s decision is supported by substantial evidence. To prove pretext based on qualifications, the plaintiff must show that she was “ ‘clearly better qualified’ (as opposed to merely better or as qualified) than the employee[] who [was] selected [for promotion].” Moss v. BMC Software Inc., 610 F.3d 917, 922 (5th Cir. 2010). This requires the plaintiff to prove that “no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.” Id. at 923.
¶35. MDPS stipulated that Kirk—who the panel ranked second of the six candidates interviewed for the position—was qualified and an exceptional employee. MDPS simply defended its decision to hire Cunningham based on his superior interview. The candidates’ resumes were similar. Both have college degrees and have been employed by MDPS since 1987. Both served as acting lieutenant in the driver services division following Lieutenant Wright’s retirement, and both have served in supervisory roles. Kirk was promoted to master sergeant in 2002, whereas Cunningham was promoted in 2010; however, as the hearing officer noted, Cunningham has five, work-related commendations, whereas Kirk has only one. Either candidate was qualified and could have been selected for the position. There is substantial evidence to support the hearing officer’s finding, affirmed by the EAB, that Kirk was not “clearly” more qualified than Cunningham.[6]
¶36. Finally, we address Kirk’s argument that she was entitled to an “adverse inference” because MDPS’s failure to retain interview notes allegedly violated an EEOC regulation.[7] MDPS retained and produced copies of the interview questions and the scoring , sheets completed by the interviewers; however, as noted above, Major Gillard testified - that he shredded any handwritten notes taken by the interviewers because thé interview questions might be reused and he ,did not want any answers disclosed. The notes that were destroyed were described as “shorthand” or “scratch” notes, and Colonel Berry testified that agency policy did not require Gillard to retain the notes. Kelly testified that he did not recall taking any notes. The en banc EAB rejected Kirk’s argument based on the notes, affirming the hearing officer’s implicit finding that their destruction was not “significant.”
¶ 37. For two reasons, we conclude that Kirk’s argument is without merit. First, we.agree with the United States Court of Appeals for the Seventh Circuit that “[ejmployers are not required to keep every single piece of scrap paper that vari *158 ous employees may create during the termination process”—or, in this case, the promotion process. Rummery v. Ill. Bell Tel. Co., 250 F.3d 553, 558-59 (7th Cir. 2001). “It is sufficient that the employer retains only the actual employment record itself, not the rough drafts or processes which may lead up to it.” Id. at 559. In Rwmmery, the Seventh Circuit held that the employer complied with the EEOC regulation by retaining “final ranking sheets” that aggregated employees’ rankings by multiple managers who had evaluated their- performance. Id. at 558-59, The court held that the 'employer was not required to retain “evaluation notes” that were merely-“informal ñotes” that individual evaluators “may have taken.” Id. Likewise in this case, MDPS retained the interview questions and score sheets; we do not believe that federal law required the. agency to retain “scratch” or “shorthand” notes that may have been taken by interviewers.
¶38. Second, as noted above, the EAB acknowledged Kirk’s argument ‘but did not find it persuasive. In Thomas v. Isle of Capri Casino, 781 So.2d 125 (Miss. 2001), our Supreme Court held that a casino patron was entitled to the benefit of an adverse inference in a case involving a disputed slot machine jackpot because the casino had destroyed a central processing unit that would have conclusively resolved the dispute. Id. at 133-34 (¶¶ 36-43). Nonetheless, the Court still affirmed the Gaming Commission’s decision rejecting the patron’s claim because there was “ample secondary evidence” to support the decision. Id. at 134 (¶ 43). This included witnesses “who offered conflicting testimony,” and, “as the finder of fact,” the Commission “was responsible for judging their veracity.” Id. at (¶ 44). The- same is true in this case. The EAB affirmed the hearing officer’s implicit finding that the shredding of the notes was' not “sighificant.” Further, there was substantial evidence to support the EAB’s ultimate finding that Kirk failed to meet her burden of proving- that MDPS’s stated reason was a pretext for intentional discrimination.
CONCLUSION
¶39. At step two of the MeDormell Douglas framework, MDPS articulated a legitimate/ nondiscriminatory reason for its decision to promote Cunningham rather than Kirk. Thus, at step " three of the framework, the trier of fact hád to determine whether Kirk met her burden of proving that the agency’s stated reason was a pretext for intentional discrimination. The EAB was the trier of fact and the judge of witnesses’ credibility in this case. There is substantial evidence to support its findings and' decision denying; Kirk’s claim.[8] Therefore, we affirm.
*159 ¶ 40. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
GRIFFIS, P.J., BARNES, ISHEE AND FAIR, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., IRVING, P.J., AND WESTBROOKS, J. GREENLEE, J., NOT PARTICIPATING.
LEE, C.J., IRVING, P.J., AND ■ WESTBROOKS, J., JOIN THIS OPINION.

. Major Gillard subsequently was appointed Assistant Commissioner of Public Safety and Director of the MHSP and promoted to the rank of colonel: •

. General Order No. 22/01 establishes generally applicable, procedures for promotion of sworn personnel within MDPS/MHSP but does not govern appointments to specialized positions that are subject to General Order No. 22/02.

. At the conclusion of the EAB hearing, the hearing officer specifically asked: "So the only issue before the [EAB] now is the gender discrimination?” Kirk’s counsel confirmed that this was correct.

. At the hearing before the EAB, counsel for MDPS explained that a written test is not used for a "specialized” position such as the one at issue here because of the significant cost associated with developing such a test.

. If there is a conflict between the findings or decision of the hearing officer and the find-tags or decision of the en banc EAB, a reviewing court must review and defer to the find- *157 tags and decision of the en banc EAB. See Miss. Dep’t of Transp. v. Rutland, 965 So.2d 696, 702-03 (¶ 11) (Miss. Ct. App. 2007). However, we also defer to findings of the hearing officer that, as in this case, were affirmed by the en banc EAB. See id.

. In making this argument, Kirk places great emphasis on the fact that she had served as a master sergeant longer than Cunningham. However, the third-rated candidate, a male, had served as a master sergeant longer than either Kirk or Cunningham.

. See 29 C.F.R. § 1602.Í4 ("Any personnel or - employment record made or kept by an employer (including but not necessarily limited to requests for reasonable accommodation, application forms submitted by applicants and other records having to do with hiring, promotion, demotion, transfer, lay-off or termination, rates of pay or other terms of compensation, and selection for training or apprenticeship) shall be preserved by the employer for a period of one year from the date of the making of the record or the personnel action involved, whichever occurs later.”).

. In a footnote, the dissent notes that a jury verdict and judgment were entered in favor of Kirk in federal district court on a claim" that appears to be similar, if not identical, to the claim at issue in this appeal. Post at n.10, MDPS subsequently filed a motion for judgment notwithstanding the verdict or a new trial, which remains pending. These documents are publicly, available. However, there is nothing in the record in this appeal about the federal case, and neither party has raised any issue or made any argument regarding the preclusive effects of the federal case on this case (or vice versa). The mere fact that a federal jury returned a verdict in Kirk’s favor is not inconsistent with our decision in this appeal.' For the reasons explained above, there was sufficient evidence for the fact-finder in this case, the EAB, to find that Kirk did not meet her burden of proving intentional discrimination. Our opinion does not hold that to be the only conclusion that the evidence permits; we hold only that it is a permissible conclusion that is supported by substantial evidence, ’ The fact-finder in the federal case, the jury, apparently reached a different conclusion based on the evidence presented at trial in that case. But even assuming that the federal verdict will be upheld *159 and that it' was based on the exact same evidence presented to the EAB, it is certainly possible for rational fact-finders to draw different conclusions from the same evidence. That is the very reason for having a trial or, as in this case, an . administrative hearing. Indeed, if the evidence permitted only one conclusion, there would have been no need for a jury trial on liability in the federal case.