# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-11070

United States Court of Appeals
Fifth Circuit

**FILED**

April 18, 2014

Lyle W. Cayce
Clerk

DR. KAREN LOPEZ AUSTEN,

Plaintiff–Appellant,

versus

WEATHERFORD COLLEGE,
of the Parker County Junior College District,

Defendant–Appellee.

Appeal from the United States District Court
for the Northern District of Texas
No. 4:11-CV-536

Before SMITH, DeMOSS, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Karen Austen appeals a summary judgment in favor of Weatherford

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-11070

College on her various retaliation and discrimination claims.  We affirm.


I.

This workplace dispute began as soon as Weatherford College hired Austen as a professor and Department Chair of Kinesiology in 2007.  Immediately at the beginning of the school year, Austen came into conflict with several of her colleagues.  The assistant men's basketball coach alleged in a formal internal complaint (an "REC," or Resolution of Employee Concern) that Austen had made improper comments to him regarding his physique, initiated confrontations with him, and often secretly took photographs of him as he was working out.  A secretary in the Kinesiology Department filed a police report alleging that Austen had acted inappropriately with her daughter by inviting her to her office, showing her inappropriate photos, and asking to measure her with a measuring tape.  The secretary also filed an REC alleging that Austen had belittled her, threatened her, stalked her, and created "an unrelenting hostile work environment on a daily basis."

The following summer and year, the athletic director reported concerns regarding Austen's aggressive and confrontational treatment of another departmental secretary.  Austen's supervisor, a dean, shortly thereafter sent an email reprimanding Austen for her failure to follow the college's purchasing policy.  A few days later, a college senior vice president reprimanded Austen for unprofessional behavior, noting that she had stormed out of his office and interrupted an ongoing meeting. The senior vice president also began an investigation into a student's allegation that Austen had come to her dorm room to ask her to assert a complaint against the departmental secretary.  Austen was subsequently reprimanded for making contact with the student after having been ordered not to, allegedly asking the student to make a false report.  Austen continued to receive reprimands or complaints for her alleged

2

No. 12-11070

unwillingness to participate in administration meetings and for other unprofessional behavior. She was eventually demoted as department chair.

Throughout this period, Austen filed her own RECs and complaints against the individuals with whom she had disputes. Those grievances alleged sex discrimination and sexual harassment among other complaints variously lodged against the athletic director, the assistant men's basketball coach, one of the department secretaries, and the administration generally. In December 2008, after her demotion, Austen filed a complaint with the EEOC alleging sex discrimination and retaliation for filing her grievances related to sexual discrimination and harassment. The EEOC dismissed the case.

In 2009, the college, without admitting liability, entered into a settlement with Austen whereby she agreed to release all claims in return for the college's agreement, among other things, to cease all current investigations and to remove five performance notices and disciplinary warnings from her personnel file. The following year, however, the complaints against Austen continued to roll in from old and new fronts. One coach complained that Austen had made false accusations about him and forced his students off of treadmills during class time; another adjunct faculty member asserted that Austen had yelled at her, shut a door in her face, made inappropriate comments, and made her feel harassed when signing payroll notifications. Another department secretary complained that Austen had forced her to do an assignment that would require her leaving her desk even though her boss had instructed her to stay to answer an important phone call.

Students complained as well. One reported that Austen had made an inappropriate sexual comment to her when she was using an abductor machine, stating, "Let's see if she is loose. Let's see if she is a virgin." Other students complained that Austen had threatened to count them absent and to fail them if they did not stay after class. Finally, several witnesses complained

No. 12-11070

to the college about an incident at the college bookstore. Multiple witnesses reported that Austen had told an African-American student, "You'll have to go to another register because she [the cashier] doesn't wait on black people," told an Hispanic student, "They [the bookstore] charge Hispanics 20 percent more," and told an overweight student, "I can tell you where the lo-cal snacks are." Austen also answered the bookstore phone and responded to the student's question by saying, "First you have to tell me if you are black or white because it is different times for different people."

In May 2010 Austen received notice that the president was recommending nonrenewal of her annual contract based on six incidents of unprofessional behavior that had occurred in the previous semester. Those incidents include the bookstore comments, those that involved the department secretary, the athletic director, the coach, and the adjunct faculty member and finally the student complaint about the sexual comment while on the abductor machine. Austen presented rebuttal evidence and was represented by counsel at the non-renewal hearing. The Board of Trustees voted not to renew the contract.

Austen filed a second charge with the EEOC, which was dismissed, then filed the present suit. She appeals the summary judgment grant on her Title VII and the Texas Commission on Human Rights Act ("TCHRA") retaliation claim, her Title VII and TCHRA sex and race discrimination claims, and her First Amendment retaliation claim. She also appeals the dismissal of her claim that the college violated the settlement agreement.

## II.

We review a summary judgment *de novo* and apply the same criteria used by the district court. *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir. 2003). Summary judgment is appropriate where the evidence shows that there is "no genuine dispute as to any material fact" and that the

No. 12-11070

moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In Title VII cases, summary judgment is based on various burden-shifting frameworks. If the plaintiff makes a *prima facie* case but the defendant proffers legitimate reasons for the adverse action, the plaintiff must present some evidence of pretext. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (retaliation claims); *Patel v. Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 342 (5th Cir. 2002) (sex and race discrimination claims).

### III.

We begin with the Title VII retaliation and discrimination claims (and the state equivalents) and apply the traditional burden-shifting frameworks for summary judgment. Austen has not established a *prima facie* case for either retaliation or discrimination, and even if, *arguendo*, she has done so, she has failed to rebut the legitimate reasons for termination offered by the college.

To establish a *prima facie* case of retaliation under either Title VII or TCHRA, Austen must establish that she engaged in a protected activity, that she was subjected to an adverse employment action, and that there is a causal link between the two. *McCoy*, 492 F.3d at 557. The only evidence of a causal link was that the Chairman of the Board of Trustees said that the first EEOC complaint "was part of the overall evidence we looked at." Austen also presented her *own* belief that a jury could find the reasons for nonrenewal to be pretextual because *she* disputes the accounts of the underlying complainants.

What matters is not the truth of the underlying complaints and reports, however, but rather whether the college could legitimately have relied on them in deciding to terminate Austen. The college could do so. In light of the overwhelming number of documented, legitimate reasons for termination, Austen has failed to show either a causal connection or pretext sufficient to defeat summary judgment.

5

No. 12-11070

For Austen to prevail on her sex and race discrimination claims, she must establish a *prima facie* case by showing that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) she was replaced by someone outside her protected class or received less favorable treatment than did a similarly situated individual not in the protected class. *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 513–14 (5th Cir. 2001). Austen contests her nonrenewal and not her demotion, which was covered by the settlement agreement. She provides no evidence that she was replaced by someone outside her protected class, so she fails to make a *prima facie* case. Further, she offers no competent summary-judgment evidence other than her own assertions that the stated reasons for termination were pretextual. As with the retaliation claims, given the overwhelming number of documented, legitimate reasons for termination, Austen has not met her burden to prove either a *prima facie* case or pretext.

We dispose of her First Amendment claims on similar grounds. Assuming *arguendo* that Austen's complaints about alleged sexual harassment and sex discrimination constituted speech on a matter of public concern, she offers no summary-judgment evidence to rebut the legitimate reasons for nonrenewal. She thus fails to provide sufficient evidence of a disputed issue as to whether the nonrenewal was motivated by her speech. *Cf. Teague v. City of Flower Mound*, 179 F.3d 377, 380 (5th Cir. 1999).

IV.

Austen claims that the college breached the settlement agreement by removing documents about prior incidents for the purpose of using them at the nonrenewal hearing. She maintains that the intent of the settlement was that such documents would not be used against her in the future, an intent that the

college disputes. We need not decide, however, whether the agreement contemplated use of those retained documents because they played a minimal if any role in her subsequent nonrenewal. The six serious, documented instances of misconduct from the semester after the settlement agreement were the primary reasons for termination. Therefore, Austen cannot show any harm even if the settlement agreement has been breached.

The summary judgment is AFFIRMED.