CARLTON, J.,
DISSENTING:
¶ 41.1 respectfully dissent from the majority’s opinion. Upon review, I find that MDPS acted arbitrarily by failing to follow its own applicable General Order 22/02 to promote someone to fill the vacant lieutenant position.[9] Instead of following General Order 22/02, the récord shows that MDPS used an unauthorized procedure of an interview panel and an oral exam comprised of six objective technical questions to determine who received the lieutenant promotion. The record also shows that MDPS used General Order 22/01, instead of General Order 22/02, to apply a minimum-requirement standard. Moreover, the record demonstrates that MDPS’s unauthorized technical-interview exam lacked safeguards to provide a sufficient factual basis for the agency’s subjective promotional decision. In addition, the record reflects that the oral-technical-question exam had no scoring rubric to show how-the applicants’ interview answers correlated with the correct answers for each question. Thus, each interviewer was left on his own to subjectively score the correctness of each question. Furthermore, the record reflects that the interviewers’ notes were destroyed following the completion of the interview process. As- a result, I find that thé EAB’s ruling lacked the support of substantial evidence and that MDPS. acted arbitrarily and„capriciously by failing to follow its own General .Order 22/02 in reaching the promotional decision. I would .therefore . reverse the circuit court’s judgment upholding MDPS’s nonpromotion of Kirk and render a judgment in Kirk’s favor.[10] In so doing, I would order MDPS to promote Kirk to lieutenant.
¶ 42. At the end of May 2013, Lieutenant Wright retired from the driver-services division of MDPS. On June 7, 2013, MDPS posted a notice to fill the vacant lieutenant position. To apply for the position, applicants had to meet the following minimum requirements: (1) graduate from a standard four-year high school or the equivalent; (2) complete the MHSP Cadet Training School; and (3). possess seven years of experience “as a sworn officer with the [MDPS/MHSP], of which two ,.. years must have been in[-]line or functional supervision as a [mjaster [sjergeant.”
*160 ¶ 43. Kirk was among the individuals who applied for the promotion, and she was the only female applicant for the position. Kirk, Cunningham, and several other master sergeants each served as the acting lieutenant -prior to and after the vacancy for the lieutenant position. At the time of the applicant interviews for the vacant lieutenant position, Kirk was serving as the acting lieutenant. As the record reflects, she had been employed with MDPS since 1987 and had served as a master sergeant for eleven years prior to seeking the lieutenant promotion.
¶ 44. Testimony presented at the EAB hearing on Kirk’s appeal reflected that, during the relevant time period, MDPS had two general orders that governed promotions—General Order 22/01 and General Order 22/02. General Order 22/01 provided a two-step testing procedure for the merit-based promotions of sworn personnel within MDPS and MHSP. The first step, the screening phase, included the following: (1) a written exam; (2) an oral interview; and (3) the applicant’s experience and education. The second step, the appointment-board phase, consisted of an interview with a three-member board. General Order 22/01 stated that, to be eligible to test for a promotion to the rank of lieutenant, an applicant had to serve for seven years, with two of those years being served as a master sergeant.
¶ 45. In contrast to General Order 22/01’s governance of merit-based promotions for sworn personnel, General Order 22/02 set forth the selection procedure for specialized positions. General Order 22/02 provided:
A. Candidates for a specialized position must hold the rank of [m]aster [s]er-geant or higher and be eligible to qualify as a [l]ieutenant or. higher.
B. After reviewing the qualifications of the candidates, the Director of the Office of [MHSP,] with the approval of the Commissioner of [MDPS,] will appoint the candidate to fill the position.
C.Notwithstanding the provisions of General Order 22/01 or this Order, the Commissioner of [MDPS] shall have the ability to promote in rank sworn personnel possessing skill, knowledge^] and professional experience to specialty positions, such as but not limited to, those listed above at his/her discretion after consulting with the Director of [MHSP.]
¶46. During the EAB hearing, Major Gillard testified that General Order 22/02 applied to the vacant lieutenant position in' the driver-services division because the position was a “specialized position.” The hearing officer agreed. The hearing officer found that “General Order 22/01 controls tested positions in both the Enforcement Division of [MHSP] (Enforcement Troopers) and the Mississippi Bureau of Investigation” and that, “[candidates for merit[-]promotion testing under General Order 22/01 must be sworn [MHSP] Officers.” By contrast, the hearing officer concluded that “General Order 22/02 is designated for promotion of Speciality [positions, as well as for other positions not specifically named for promotion by another General Order.” Consistent with Major Gillard’s testimony during the hearing, the EAB officer determined that General Order 22/02 controlled promotions in driver services and, as a result, applied to the promotional process for the lieutenant position at issue..
¶47. The hearing officer further found that, in accordance with General Order 22/02 and the job-posting notice, both Kirk and Cunningham met all the minimum qualifications required to interview for the vacant lieutenant position. Like Kirk, the hearing officer found that Cunningham *161 had been employed with MDPS since 1987 and had held the rank of master sergeant for at least two years prior to applying for the vacant lieutenant position. As previously noted, the hearing officer found that Kirk had served as a master sergeant for eleven years. With regard to Kirk’s other qualifications, the hearing officer found that Kirk had: (1) supervised as many as fifteen employees and one sworn officer since becoming a master sergeant; (2) supervised the day-to-day operations of the driver-services division in District II; and (3) received one work-related commendation. With regard to Cunningham’s qualifications, the hearing officer found that Cunningham had: (1) served as a master sergeant for more than three years prior to seeking the promotion; (2) supervised eleven or twelve driver-license examiners and one sworn officer; and (3). received five work-related commendations. The record shows that the hearing officer looked at the minimum qualifications for the lieutenant position instead of considering which applicant was the most qualified in terms of skill, knowledge, and professional experience as required by General Order 22/02.
¶ 48. As required by the job-posting notice, all six of the interviewees for the vacant lieutenant position had held the rank of master sergeant for at least two years. As stated, however, Kirk had held the position of master sergeant for the previous eleven years and was the most recent acting lieutenant of the driver-services division. On July 17, 2013, instead of following General Order 22/02, a three-person panel interviewed the six applicants for the position. The questions asked during the interview exam constituted objective technical questions and not subjective questions. However, as stated, the interviewers were not provided a rubric for scoring the correctness of the answers to the questions. The interviewers could score the questions however they chose even though the questions constituted objective technical questions.
¶ 49. Major Gillard, the then-director of the driver-services division, conducted, the interview process. Major Gillard selected Captain Parker and Lieutenant Kelly as the other two interview panelists. At the time of the interview,' Captain Parker was the deputy director of the driver-services division, ahd Lieutenant Kelly was a lieutenant in the division. Due to their positions within the driver-services division, all three men were in Kirk’s supervisory chain of command.
¶ 50. Major Gillard and Captain Parker determined that, once applicants met the minimum qualifications to interview for the vacant lieutenant position, the applicants’ interview score would become the sole factor for determining who received the pro-motipn. Major Gillard and Captain Parker testified that they developed six technical questions (as well as the corresponding answers) for the interview. However, as noted, the interviewers were provided no scoring scale or rubric for grading the answers to the questions. The panel asked each interviewee these same six questions.
¶ 51. In response to the interviewees’ oral answers to the questions, the interview panel took notes and scored each response between one and five, with five being the best score. Since no scale or rubric existed for how to grade the answers to the questions, each panelist subjectively graded the interviewees’ answers. Prior to the interviews, the panel agreed that no interviewer’s final score of a candidate would be more than one point different from another interviewer’s fihal score. As a result, after completing each interview, and before entering a candidate’s final overall score, the panel members compared their- subjective individual scores *162 for the candidate to determine .whether any scoring discrepancies existed. Where the scores for a specific question differed by more than one point, the interviewers discussed the scores and changed them to more closely align with one another.
, ¶ 52., Based on the applicants’ interview responses, the panel’s final scores for the candidates ranged from forty-three to seventy-three. Cunningham received the highest score at seventy-three, and Kirk received the second highest score at sixty-four. After completing the interview process, Major Gillard testified that he shredded both the answers to the exam and the interviewers’ notes. Although admitting that this was not agency policy, Major Gillard asserted he took this step as an added precaution to protect the integrity of the interview process.
¶ 53. Although the record failed to contain the interviewers’ notes or the correct exam answers, the record did contain the interviewers’ score sheets for each applicant. As discussed, since no scoring rubric existed, the interviewers could score the answer to each question between one and five as the interviewer saw fit. The score sheets showed that the interviewers gave Kirk a significantly lower score than Cunningham on interview questions 2 and 4. At the EAB hearing, the interviewers testified as to why they awarded Kirk a lower score on these questions.
. ¶ 54. Interview question 2 asked the interviewees to explain what they would advise in the following scenario: “A [mjaster [sjergeant calls and tells you that [an individual who is sixteen years and nine months old] has an Alabama learner’s permit, . has held [the permit] for eight months[,] and wishes to get a Mississippi intermediate license.” In discussing interview question 2, both Major Gillard and Captain Parker explained that Kirk initially gave a correct answer to the question but then changed her answer to an incorrect response. As a result, Captain Parker testified that he awarded Kirk fewer points than he would have if she had stuck to her initial answer. Major Gillard also testified that he originally awarded Kirk a four out of five but then lowered her score once she changed her answer to the incorrect response. As for Lieutenant Kelly, he testified that he did not recommend Kirk for the promotion because she failed to fully answer the questions.
¶ 56. Interview question 4 asked the interviewees what “B” represented on a permanent disability card. Although the testimony reflected that “B” stood for “both,” Captain Parker and Lieutenant Kelly explained that an applicant could answer “both” and receive a good score or the applicant could elaborate on the answer and receive an even higher score. In explaining the lower scores they gave Kirk on interview question 4, both Major Gillard and Captain Parker testified that Kirk answered that she did not know the correct answer to the question. Lieutenant Kelly again testified that he gave Kirk a low score because she failed to answer the question. Although Kirk admitted during her hearing testimony that she was unsure 'about her answer for question 4, she stated that she answered every single interview question. Iri addition, Kirk testified that the six interview questions were fair because they came straight from the manual on agency policies and procedures.
¶ 56. Because Cunningham received the highest cumulative oral interview score, the interview panel recommended that Colonel Berry, the. MHSP Director, promote Cunningham to the vacant, lieutenant position. Following Cunningham’s pro.motion, Kirk filed a grievance with MDPS and asserted that she was not promoted due to her race, age, and gender. As the record reflects, Kirk is a black female over *163 the age of forty, and Cunningham is a black male over the age of forty. -
¶ 57. After failing to receive her requested'relief through MDPS’s grievance process, Kirk appealed to the EAB. At the conclusion of the EAB hearing, Kirk stipulated that, based on the evidence, she would no longer pursue her discrimination claims based on race and age. As a result, the EAB hearing officer only determined whether MDPS discriminated against Kirk on the basis of her sex.
¶ 58. As previously discussed, the hearing officer found that General Order 22/02 applied to the promotion at issue because the position constituted a specialty position. The hearing officer also found that both Kirk and Cunningham met the requirements to interview for the position even though General Order 22/02 directed the promotion of “sworn personnel possessing skill, knowledget,] and professional experience to specialty positions[.]” The hearing officer also concluded that Kirk was not more clearly qualified for the position than Cunningham.
¶ 59. In addition, the hearing officer found that Kirk never introduced evidence to show that any of her supervisors had ever made a derogatory remark about her sex at any time during her employment with MDPS, and she never stated during the appeal hearing that the panel interviewers were sexist. However, the hearing officer failed to address whether a sufficient factual basis or safeguards existed to support the interview panel’s subjective grading and unauthorized promotional procedure. While acknowledging .that no females sat on the interview panel, the hearing officer also found that there were no female supervisors in driver services who would have been qualified to sit on the interview panel. The hearing officer ultimately concluded that MDPS neither discriminated against Kirk based upon any impermissible ground nor denied Kirk the promotion based on her sex. As stated, without addressing, the unauthorized grading procedure or subjective grading used by the interview panelists, the hearing officer determined that Cunningham received the promotion for a legitimate, nondiscriminatory reasoii—his higher score on the interview. As a result of his findings, the Hearing officer denied Kirk’s requested relief.
¶ 60. On March 6, 2015, the hearing officer , entered his order finding that MDPS had not failed to promote Kirk based on her sex. Kirk then appealed to the full EAB, which affirmed the hearing officer’s decision. On May 1, 2015, Kirk filed a petition with the- circuit court to appeal the decision reached by the full EAB. Aggrieved by the circuit court’s judgment affirming the EAB’s determination, Kirk appeals to this Court.
¶ 61. The Mississippi Supreme Court has held:
The scope of judicial review of the findings and actions of an administrative agency is well-settled. The reviewing court must affirm the agency decision if the decision was (1) supported by substantial evidence; (2) not arbitrary or capricious; (3) within the scope or power of the agency; and (4). not a violation of the aggrieved party’s constitutional or statutory rights.
.... Substantial evidence exists so long as there is evidence that a reasonable mind might accept as. sufficient to support a conclusion. The reviewing court is not authorized to substitute its judgment for that of the agency where there is substantial (that is, more than a scintilla of) evidence to support the finding. Moreover, there is a _ rebuttable presumption in favor of the agency decision and the burden of proof is on the party challenging that decision.
*164 Ray v. Miss. Dep’t. of Pub. Safety, 172 So.3d 182, 187 (¶¶ 15-16) (Miss. 2015) (internal citations and quotation marks omitted).
¶ 62. I also acknowledge that jurisprudence establishes that a promotional system based on subjective criteria can be facially neutral but yet discriminatorily applied so that it adversely affects one group. Page v. U.S. Indus. Inc., 726 F.2d 1038, 1046 (5th Cir. 1984).
¶ 63. Kirk argues that the evidence submitted to the EAB demonstrated MDPS failed to promote her due to her gender. As a result, she contends the EAB’s finding that MDPS did not discriminate against her lacked the support of substantial evidence. She therefore asks this Court to reverse the EAB’s ruling.
¶ 64. Upon review, I agree that MDPS acted arbitrarily by failing to follow General Order 22/02. I also find that MDPS’s subjective promotional process lacked sufficient safeguards against discrimination and that its decision lacked the support of a clear and reasonably specific factual basis. See Alvarado v. Tex. Rangers, 492 F.3d 605, 616-17 (5th Cir. 2007); Rowe v. Gen. Motors Corp., 457 F.2d 348, 359 (5th Cir. 1972). As a result, I find that substantial evidence failed to support the EAB’s findings. I would therefore reverse the circuit court’s judgment affirming the EAB’s decision and render a decision in Kirk’s favor.
¶65. In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the United States Supreme Court established a three-pronged test for a plaintiff to prove by circumstantial evidence that she suffered intentional discrimination. First, the plaintiff must establish a prima facie case of discrimination. McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007). To establish a prima facie case of sexual discrimination, Kirk must prove: “(1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) she was replaced by someone outside her protected class or received less favorable treatment than did a similarly situated individual not in the protected class.” Austen v. Weatherford Coll., 564 Fed.Appx. 89, 93 (5th Cir. 2014) (citing Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 513-14 (5th Cir. 2001)).
¶66. The record reflects that Kirk established a prima facie case of sexual discrimination. See Alvarado, 492 F.3d at 611 (“Title VII proscribes an employer from ... discriminating against any individual because of that individual’s sex.” (citation omitted)). The parties raise no dispute as to the following facts: (1) Kirk, as a female, is a member of a protected class; (2) she met the minimum qualifications necessary to interview for the vacant lieutenant position; (3) she experienced an adverse employment action when she failed to receive the sought-after promotion; and (4) Cunningham, who was not a member of Kirk’s protected class, received more favorable treatment when MDPS promoted him instead of Kirk. See Austen, 564 Fed. Appx. at 93. Because Kirk satisfied the first prong of the McDonnell Douglas analysis, the burden shifted to MDPS “to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action.” McCoy, 492 F.3d at 557 (citations omitted).[11] MDPS’s articulated rea *165 son for not promoting Kirk was that the interview score constituted the sole determining factor for awarding the promotion, and Cunningham received a higher interview score than Kirk..
¶ 67. In previously acknowledging that a promotional system based on subjective evaluation and the favorable recommendation by an immediate supervisor can provide a ready vehicle for discrimination, the Fifth Circuit invalidated a subjective promotional system that resulted in discrimination where the ■ system embodied the following mechanisms: (1) the foreman’s recommendation was the single most important factor in the promotional process; (2) the foremen received no written instructions about the qualifications necessary for promotion; (3) the controlling standards were subjective and vague; (4) hourly employees received no notification of promotional opportunities or the requisite qualifications for jobs; and (5) the procedure contained no safeguards to prevent discriminatory practices, Rowe, 457 F.2d at 358-59.
¶ 68. In further discussing subjective promotional practices, the Fifth Circuit has stated:
An employer’s subjective reason for not selecting a candidate, such as a subjective assessment of the candidate’s performance in an interview, may serve as a legitimate, nondiscriminatory reason for the candidate’s non-selection. See [Patrick v. Ridge, 394 F.3d 311, 317 (5th Cir. 2004)] (recognizing that McDonnell Douglas does not preclude an employer from relying on subjective reasons for its personnel decisions); see also Chapman v. AI Transport, 229 F.3d 1012, 1034 (11th Cir. 2000) (“It is inconceivable that Congress intended anti-discrimination statutes to deprive an employer of the ability to-rely on important criteria in its employment decisions merely because those criteria are only capable of subjective evaluation.”). Such a reason will satisfy the employer’s burden of production, however, only if the employer articulates a clear and reasonably specific basis for its subjective assessment. See [Texas Dep’t of Cmty. Affairs v. Burdine, 450 U.S. 248, 258, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)]; Patrick, 394 F.3d at 316-17; see also Chapman, 229 F.3d at 1034 (“A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion.”); EEOC v. Target Corp., 460 F.3d 946, 957-58 (7th Cir. 2006) (agreeing with the Eleventh Circuit that “an employer must articulate reasonably specific facts that explain how it formed its subjective opinion of the applicant, in order to meet its burden under Burdine”).
Alvarado, 492 F.3d at 616-17 (emphasis added).
¶ 69. In Alvarado, a female state trooper applied for a transfer to the Texas Rangers. Id. at 609.. After failing to receive the transfer, Alvarado filed a sexual-discrimination lawsuit. Id. at 610. In reviewing the district court’s grant of summary judgment to the employer, the Fifth • Circuit found that the employer failed to satisfy its burden to proffer a legitimate, nondiserim-inatory reason because the employer provided no explanation or evidence “of how or why the interviewers arrived at [their] scores” or why the interviewers “rated the other .candidates, particularly the ten men who were selected for the Rangers, higher *166 than Alvarado.” Id. at 617. The Fifth Circuit further noted that “Alvarado’s score sheets contain no notes or comments on her interview performance, and [the employer] has not pointed to any deposition testimony by the [interviewers] that would shed light on why they scored Alvarado and the other candidates the way they did.” Id. “Without some indication of the factual basis or. specific reasons for Alvarado’s interview score,” the Fifth Circuit concluded, that Alvarado’s interview score was “at least as consistent with discriminatory intent as it [was] with nondiscriminatory intent because Alvarado may well have received the relatively low interview score on account of her sex.” Id. (citation omitted). ,
¶70. By contrast, in Chapman, the Eleventh Circuit found that the employer offered a sufficiently specific explanation for its failure to hire the plaintiff, Chapman, based on his interview. Chapman, 229 F.3d at 1028. In Chapman, the employer offered two legitimate, nondiscriminatory reasons for failing, to hire Chapman. Id.[12] The Eleventh Circuit recognized that the employer’s second proffered reason—Chapman’s poor interview—constituted a subjective reason for failing to hire Chapman. Id. However, in discussing the employer’s proffered subjective reason for refusing to hire Chapman, the Eleventh Circuit found that the employer “offered a clear and reasonably specific explanation of why Wogsland and Turnquist, the decision . makers, arrived -at that subjective conclusion.” Id. at 1035. As the Eleventh Circuit stated, the decision makers offered the following explanation to support their decision not to hire Chapman:
Wogsland observed that Chapman’s imprecise answers were not “the answers -he. would expect Chapman needed to be able to give to technicians under his control, within his unit.” As an example of an unclear answer given by Chapman, Wogsland stated that Chapman “wasn’t, very clear about why he had gone from Home Insurance Company to several other, positions before he got to Transport.”
Turnquist explained that he[,] too[,] was concerned about how Chapman presented his work history.-In comparing Wiggins[, another candidate,] and Chapman’s interviews, Turnquist stated:
I thought that ... Wiggins made á better presentation of himself and his skills. ... I don’t have an answer to that[.] ... I felt I had more confidence in Graham in the way he presented his work history.
Id. The Eleventh Circuit concluded, that, “[e]ven though Wogsland and Turnquist subjectively evaluated Chapman’s interview, they also explained the grounds for their evaluation with reasonable clarity and specificity given the passage of time.” Id. As a result, the Eleventh Circuit found that the employer had met its burden of establishing a legitimate, nondiscriminatory reason for failing to hire Chapman. Id.
¶ 71. Upon review, I find the facts in the present-case are more similar to Alvarado than to Chapman. The interviewers in the present case failed to follow General Order 22/02’s directive to promote “sworn personnel possessing skill, knowledge^] and professional experience to-specialty positions[.]” MDPS instead used minimum standards and an unauthorized oral-technical-question exam. MDPS then shredded the interview notes after’ the interview. Without a correlating scale or rubric for grading each of the objective technical *167 questions asked -during the interview, MDPS lacks the ability to provide “a clear and reasonably specific basis for its subjective assessment” of Kirk’s interview. See Alvarado, 492 F.3d at 616 (citations omitted). As a result, Í find that MDPS failed to meet its burden to establish a legitimate, nondiscriminatory reason for refusing to promote Kirk. See McCoy, 492 F.3d at 557.
¶72. As discussed, the record reveals that MDPS failed to follow authorized agency procedures or policies in conducting the promotional process for the vacant lieutenant position. The hearing officer found that General Order 22/02 governed the lieutenant position. However, the record demonstrates that MDPS completely failed to follow General Order 22/02. Regardless of whichever applicant possessed the most skill, knowledge, and experience related to the vacant position, the interviewers decided .that an oral interview exam alone, made up of six objective technical questions, would constitute the final determining factor as to who received the promotion. Also, instead of following General Order 22/02, MDPS applied the minimum standards applicable to a lieutenant position governed by General Order 22/01 to the specialty position at issue. Moreover, the evidence in the record of the shredding of the interview notes, lack of a scoring rubric, lack of approval of the scoring process, and composition of the interview panel reflects that no safeguards existed in this unauthorized subjective grading procedure to avert discrimination. See Rowe, 457 F.2d at 359. Jurisprudence reflects that a promotion system based on subjective criteria can be facially neutral but discriminatorily applied to adversely affect one-group. Page, 726 F.2d at 1046. In the present case, MDPS failed to present evidence during the EAB hearing to show that the interviewers’ chosen scoring method was or ever had been approved by the agency. Not only does the record demonstrate that no agency policy authorized such a promotional process, but also that no safeguards existed within the utilized promotional process to avoid discrimination or to validate the interviewers’ subjective grading of objective technical questions. See Rowe, 457 F.2d at 359.
¶ 73.-.Despite the panel members’ testimony about the utilized promotional process, the record reflects no specific evidence to which MDPS can point on-appeal to meet its burden and demonstrate “how or why the interviewers , arrived at [their] scores See Alvarado, 492 F.3d at 617. The scores for each interview question had no supporting scoring rubric, and following the interview, process, Major Gil-lard shredded both the answers to the exam and the interviewers’ notes. As Major Gillard himself admitted, this action was not authorized by any agency policy,
¶ 74. The record lacks any objective and reasonably specific evidence to validate the interviewers’- initial subjective scoring of each question or*'their decision to then change differing scores to more closely align with each other. Without a scoring scale or rubric for the correct answers, the record lacks evidence as to the correctness, of the answers to the objective questions and, thus, lacks an explanation of how the interviewers weighed and evaluated the content and correctness of each interviewee’s answer to each question. Cf, id. (noting that the record contained no notes or comments, that shed light on Alvarado’s interview performance). Without such evidence as a means to satisfy MDPS’s burden of production, I find insufficient MDPS’s mere assertions that Cunningham was the most qualified candidate for the lieutenant position. As the Alvarado court noted, an employer’s failure to provide sufficient evidence to meet its burden- of production fails to afford the claimant “a full and fair opportunity to.demonstrate pretext.” Id. at 618. Beg. also Burdine, 450 *168 U.S. at 255, 101 S.Ct. 1089 (“[T]he defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiffs rejection.”).
¶75. Upon review, I find the record clearly reflects that MDPS acted arbitrarily and capriciously by failing to follow General Order 22/02 or any authorized agency procedure or policy in this promotional decision. See Ray, 172 So.3d at 187 (¶¶ 15-16). Furthermore, as discussed, MDPS failed to articulate a clear and reasonably specific factual basis for its subjective assessment of Kirk during the promotional process. See Alvarado, 492 F.3d at 616-17. As a result, MDPS failed to articulate a legitimate, nondiscriminatory reason for Kirk’s nonpromotion. See McCoy, 492 F.3d at 557. I therefore conclude that the EAB’s finding regarding Kirk’s sexual-discrimination claim lacked support by substantial evidence. Accordingly, I would reverse the circuit court’s judgment and render a judgment in Kirk’s favor. In so doing, I would find that MDPS should promote Kirk to the position of lieutenant. As a result, I dissent from the majority’s opinion.

. See Ray v. Miss. Dep't of Pub. Safety, 172 So.3d 182, 187 (¶¶ 15-16) (Miss. 2015) (stating that the appellate courts will reverse an agency decision not supported by substantial evidence).

. See and compare Kirk v. Miss. Dep't of Pub. Safety, No. 3:14-CV-00537-WHB-RHW, 2017 WL 1428488 (S.D. Miss. Feb. 1, 2017) (jury verdict entered in federal court in favor of Kirk).

. See also Texas Dep’t of Cmty. Affairs v. Burdine, 450 U.S. 248, 257, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (“We have stated consistently that the employee’s prima facie case of discrimination will be rebutted if the employer articulates lawful reasons for the action; that is, to satisfy this intermediate burden, the employer need only produce ad *165 missible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been ■ motivated by discriminatory animus.”).

. Compare Cash Distrib. Co. v. Neely, 947 So.2d 286, 294 (¶ 29) (Miss. 2007) (refusing to follow the position adopted by several federal courts of appeals that an employee must rebut every single nondiscriminatory reason an employer proffers),